**MERCANTILE NAT. BANK OF CLEVELAND v. HUBBARD,**
County Treasurer.

(Circuit Court of Appeals, Sixth Circuit. December 10, 1900.)

No. 817.

1. TAXATION—ASSESSMENT OF BANK SHARES—INCREASE OF VALUATION WITHOUT NOTICE.

Rev. St. Ohio, §§ 2808, 2809, which require the state board of equalization for incorporated banks to meet annually on a fixed date, to examine the returns of said banks to the county auditors, and the value of their shares as fixed by the auditors, and to hear complaints and equalize the value of said shares "according to the rules prescribed in title 13 for valuing and equalizing the values of real and personal property," when read in connection with the provisions of said title 13, confer no power on the board to change the valuation of bank shares without reasonable notice to the parties interested and an opportunity for a full hearing; and an increase in the valuation of the shares of a national bank made by such board at a subsequent meeting, to which no adjournment was shown by its records, and without notice to the bank or its shareholders, is not merely irregular, but is void for want of jurisdiction.

2. SAME—NATIONAL BANK SHARES—ENJOINING COLLECTION OF ILLEGAL TAX.

A national bank may maintain a suit in a federal court to enforce the right given by Rev. St. Ohio, § 5848, to enjoin the collection of taxes levied on an illegal assessment.

3. RES JUDICATA—MATTERS CONCLUDED BY JUDGMENT—MISTAKE AS TO QUESTIONS IN ISSUE.

Upon a certificate of division from a circuit court the supreme court held, incidentally, that shareholders in national banks in Ohio were entitled to deduct their indebtedness from the value of their shares for pur-

poses of taxation. Such decision, however, was based on the assumption that the state statutes allowed such deduction from all moneyed capital other than national bank shares, and thus illegally discriminated against such shares, whereas in fact, and as shown by the pleadings in the case, it was only allowed from "credits," which were defined in the statute, and included only a limited class of moneyed capital. The court in a subsequent suit, in which the question arose under the same statute, refused to treat it as having been determined by the former opinion, and, on a consideration of the statute, reached a contrary conclusion. *Held*, that under such facts the first judgment did not render the question res judicata between the parties, as affecting their rights under subsequent assessments.

4. SAME.

A decree adjudging, upon pleadings distinctly presenting the issue, that the system of taxation provided by the statutes of a state illegally discriminated against shares in national banks, by refusing to the holders the right to deduct their bona fide indebtedness from the value of such shares, while permitting such deduction from other forms of moneyed capital, renders such judgment res judicata between the parties, as applied to assessments for subsequent years under the same statutes.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

For opinion below, see 98 Fed. 465.

The bill in this case sought to restrain the collection of certain additional taxes imposed on shares of stock in the bank by virtue of an order of the state board of equalization for the state of Ohio for the year 1897. It was also sought to enjoin the collection of the tax levied upon said shares held by certain stockholders upon the ground that the stockholders named were on the taxing day of that year lawfully indebted to others in bona fide debts in excess of all their other credits in a sum equal to or exceeding the value of the shares of appellant's stock so held by them. It is also claimed that the refusal to permit such reduction was a violation of section 5219 of the Revised Statutes of the United States, restricting the rate of taxation on shares of national banks to that assessed upon other money capital in the hands of individual citizens of the state. It was further alleged that said shareholders were entitled to such deduction on the ground that their right thereto had theretofore been adjudicated by the circuit court in actions between the appellant and the then treasurers of Cuyahoga county, which adjudications were in full force and operation, were between the same parties, and involved the same subject-matter. The case was referred to a special master, and his report is fully set forth in the record. Upon this appeal two propositions are urged upon the attention of the court: (1) Alleged error in the action of the circuit court in holding that the increase by the state board of equalization without notice afforded no ground of relief. (2) Error in the failure of the court to sustain the bill on the ground of former adjudications, as set up in the record and disclosed in the testimony. As to the claim of res adjudicata, the facts sufficiently appear in the opinion of the court upon that subject. As to the claim that the state board of equalization met and acted without notice, the master finds the following facts:

"Sixth. Said county auditor made out and transmitted to the annual state board of equalization for incorporated banks a copy of the report so made by the cashier of complainant bank, together with the valuation of such shares as so fixed by him, on the 19th day of July, 1897. There was attached to said report a copy of the report of the Mercantile National Bank of Cleveland, Ohio, to the comptroller of the currency, made next prior to the second Monday of May, 1897, to wit, May 14, 1897.

"Seventh. That the said board of equalization for incorporated banks, composed of the governor, auditor of state, and attorney general, convened on the third Tuesday, being the 15th day of June, 1897, at the office of the state auditor, as required by section 2808, Rev. St. Ohio, and organized by the election of the governor as president of the board, and G. W. Taylor, chief clerk,

in the office of the auditor, as secretary, and adjourned at the call of the secretary, transacting no other business at that meeting. That the members composing said board next met on the 7th of September, 1897, but took no action relating to the valuation of shares of the plaintiff, and adjourned. That two members of said board, with said secretary, met on the 10th day of September, 1897, but took no action relating to the shares of the plaintiff bank, and adjourned. That on the 20th day of September, 1897, the members of said board met, but took no action relating to the valuation of the shares of plaintiff, and adjourned. That on the 4th day of December, 1897, the members of said board next met at the call of the state auditor to consider unfinished business. The record of the meetings of said board, as originally made by the secretary, shows that at the meeting held June 15, 1897, September 10, 1897, September 20, 1897, the 'board adjourned.' At the meeting held December 4, 1897, the secretary was directed to amend the record as to each of said above-named adjournments by adding these words, 'Amended to read, "adjourned to meet at the call of the president of the board, Asa S. Bushnell, governor of the state," ' and thereupon said board adjourned sine die. Some time after December 4, 1897, the record was amended by the secretary as directed by said board. At none of said adjournments was a day named for the next meeting.

"Eighth. At said meeting on December 4, 1897, without complaint from any one, the members of said board, assuming to act as a board, increased the valuation of the shares of the plaintiff from $519,320, so fixed by the county auditor, to $642,320, and on the 6th day of December certified said valuation to the auditor of Cuyahoga county, to be by him placed on the treasurer's duplicate, which was accordingly done. That neither of said meetings of the members of said board following the third Tuesday of June, 1897, was called by said secretary, and no notice or information of any kind or opportunity to be heard was given by said board, its secretary, or any other person, to said bank or any of its officers, directors, or shareholders, of any or either of said meetings, except such as the statute gave them, to wit, section 2808, Rev. St., and succeeding sections; nor did they, or either of them, have any notice of any of said meetings, or appear thereat, and the first information that said bank or any of its shareholders had or received of any action of the board, or of the purpose to increase the value of the shares so fixed by the auditor, was on the 7th day of December, 1897, after the action of the board was had; and such information was conveyed by letter from the auditor of the county to the cashier of the plaintiff, notifying him of the completed action of the board. That thereupon said bank and its shareholders, through the officers and agents of the bank duly authorized, applied to the members of said board for a hearing, and was notified that two of the members of said board were out of the state, and that December 28th was as early as the bank officers could be received. That on said day the officers of said bank, on behalf of said shareholders, duly authorized, met the members of said board at Columbus, and made application for a hearing respecting the valuation of said shares and the action of said board, and notified said members of said board that such increase made on the shares of said bank was excessive and unwarranted, and protested against the same, but said hearing was denied, the members of said board declaring that the board had adjourned sine die, and could not reconvene as a state board of equalization for banks, to consider any claim or application respecting the value of said shares. At the time the persons who had composed the state board of equalization for banks, and who are the same persons required to act under section 167 of the Revised Statutes of Ohio, offered to convene and organize under said section 167 to consider the case of the various plaintiff banks at such time as might be convenient for the representatives of the Cleveland banks to appear. Some doubt was expressed by some of the members of the committee that the board would not have the power, under section 167, to afford as full relief as the board of equalization, and only one of the Cleveland banks appeared before the board when organized under section 167, viz. the First National Bank. The others declined to appear.

"Ninth. That the said auditor of said county of Cuyahoga upon the receipt of the certificate from said state board of equalization entered said valuation

of $642,320 upon the tax duplicate of said county for the year 1897, and assessed against the same taxes at the rate of 3.03 cents on. each dollar, and which amounted, on said valuation, to $19,462.30. The taxes on said bank shares at the said rate of 3.03 on each dollar, if assessed on the valuation of $519,320, as fixed by the auditor· of Cuyahoga county, would have amounted to the sum of $15,735.39."

The master reported, as his conclusion of law, that the attempted increase was void for want of notice to the taxpayer of the meeting at which the increase was ordered by the board.

. W. W. Boynton, · for appellant.
Smith W. Bennett, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The learned circuit judge, in disposing of the matter of the increase of the valuation of the stock in complainant bank made by the state board of equalization for incorporated banks, expressed the opinion that the tax actually assessed being no greater than ought to have been assessed, considering the market value of said stock, the complainant was not in a position to ask a court of equity to intervene; and he therefore declined to consider the irregularity in the action of the state board. The statute of Ohio (section 2808) fixes the time for the meeting of the state board. This board is required to meet on the third Tuesday of June, annually, at the office of the auditor of state, and examine the returns of said banks to the county auditors, and the value of said shares as fixed by the county auditors, as the same shall have been reported by the county auditors to the state auditor. At this meeting it was provided (section 2809) that. said board shall hear complaints and equalize the value of said shares according to the rules prescribed in title 13 for valuing and equalizing the values of real and personal property. Looking to the other sections of the statute contained in this title, we find that it is provided in section 2804 that the annual county board shall not increase or reduce the valuation of any real estate except in cases of gross inequality, and then only upon reasonable notice to all persons directly interested, and an opportunity for a full hearing upon the question involved. Section 2807 provides, speaking of the powers of city boards to hear complaints, that:

"No such addition shall be made to such list returned under oath without the board having first given reasonable notice to the person or persons whose personal property is sought to be added. to, or the valuation thereof increased, to appear before said board at a time and place to be fixed by said board, . and show cause why such addition should not be made, or why such valuation should not be increased."

These statutes, construed together, we think, require that the state board of equalization, before it can increase the value of shares of incorporated banks, shall give notice to persons affected by its action. Undoubtedly the notice prescribed by the statute for the meeting of the board on the third Wednesday in June is sufficient notice to the parties that the board will meet on that day, and taxpayers are bound to take notice of the time and place fixed by law. This was

the holding of the supreme court of Ohio in the case of Hambleton v. Dempsey, 20 Ohio, 168. But in the present case it appears from the finding of the master that, on a day appointed by law for the meeting of the board, it convened at the office of the state auditor, but took no action at that meeting except to adjourn to meet at the call of the secretary. Subsequent meetings were held on the 7th, 10th, and 20th of September, at none of which was any action taken as to the valuation of the shares of complainant bank. At none of these meetings was an adjournment had to a day certain. At the meeting of December 4th an amendment of the record was made to show that adjournments were to meet at the call of the president of the board. At the meeting of December 4th the valuation of the shares of the bank was increased from $519,320 to $642,320, and no notice was given of any of these meetings. We are of opinion that the statutes of Ohio requiring notice must be complied with, in order to give jurisdiction to such a tribunal as the state board of equalization to act upon the property rights of holders of bank stock. An examination of the board record before December 4th would have shown the taxpayer that the board had adjourned without action upon his stock. Nothing recorded notified him of any time or place where he might appear and present his case to the board. In the absence of a statutory requirement, we are of opinion that such action could not be taken as would affect a citizen's property rights by increasing the value of his property for taxation without giving him an opportunity to be heard. In 1 Desty, Tax'n, at page 597, it is said:

"It is a fundamental principle that before a person can be deprived of a right, even by a judicial suit, he must have notice and reasonable opportunity to be heard in defense of his rights. A tribunal invested by law with power to affect the property of a subject is bound to give such subject an opportunity of being heard before it proceeds. The rule is of universal application, and is founded on the plainest principles of justice."

In Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215, Mr. Justice White said:

"Wherever one is assailed in his person or his property, there may he defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal."

Numerous other authorities might be cited to sustain this proposition, but we deem it unnecessary to amplify the opinion upon this branch of the case. It is an elementary principle of law that tribunals vested with power to affect the property of citizens must act with notice. He must have opportunity to be heard, and a statute which undertakes to give the right to such tribunals to interfere with property of citizens without hearing deprives him of a privilege long secured by the common law, and does not afford him due process of law. Nor do we think it an answer to this proposition to say that the assessed value was no higher than the true value of the shares in money. No increase in the value of shares already assessed can be made without jurisdiction of the party affected. Sec-

tion 5848 of the Ohio Statutes expressly provides that the illegal levy of taxes and assessments, or either, may be enjoined. Rights conferred by the statute will be enforced in the federal courts. Cummings v. Bank, 101 U. S. 153, 25 L. Ed. 903; Grether v. Wright, 23 C. C. A. 498, 75 Fed. 742. The statute gives the board no jurisdiction to increase the assessment without notice. Therefore the collection of the tax levied as a result of the board's action is illegal, and, under the Ohio statute, can be enjoined. We are of opinion, therefore, that, for want of notice to the taxpayer, the action of the state board of equalization in increasing the valuation of the shares of complainant for taxation was illegal and void, and the circuit court erred in reaching the opposite conclusion.

As a further ground for reversal it is claimed that the matter in controversy between the parties as to the right of stockholders in the complainant bank to set off indebtedness against their holdings of stock is res adjudicata between the parties, and to establish this proposition the record in the case of Mercantile Nat. Bank of Cleveland, Ohio, v. Whitbeck is introduced, in which a final decree was entered in the circuit court of the United States for the Northern district of Ohio on the 8th day of April, 1887. It is alleged that in that case the question was made as to the right of the stockholders to set off their indebtedness against their stock holdings, and was conclusively determined, it having been therein held that the tax laws of Ohio, permitting holders of other moneyed capital to set off their indebtedness, was a discrimination against the holders of national bank stock, within the meaning of section 5219, Rev. St. U. S. Since the decision of the supreme court in the case of Chapman v. Bank, 56 Ohio St. 310, 47 N. E. 54, and the decision of the supreme court of the United States in the same case, affirming the decision of the supreme court of Ohio (Bank v. Chapman, 173 U. S. 205, 19 Sup. Ct. 407, 43 L. Ed. 669), it is settled that the holder of national bank shares, in the absence of proof of discrimination in favor of capital coming into competition with that invested in shares in national banks, has no right to deduct the amount of his bona fide debts from such shares, but is legally bound to pay the tax upon the assessed value thereof without deduction on account of such debts. No attack upon this position is made in the argument of this suit in behalf of the appellants, but it is insisted that the matter is res adjudicata, because of the decision in the suit of appellant against Whitbeck, treasurer. That case is reported in 127 U. S. 193, 8 Sup. Ct. 1121, 32 L. Ed. 118. The bill in the case was based on two grounds,—to restrain the treasurer from collecting taxes because bank shares had, in the county of Cuyahoga, by certain means set forth in the bill, been assessed at 65 per centum of their value, whereas other capital of citizens in that county was assessed at 60 per centum of its value. This the supreme court held to be unlawful discrimination against the holders of such shares. Upon the question raised here, it is necessary to examine the manner in which it was made, and the nature of the decree granting a perpetual injunction. From the record in evidence in the Whitbeck Case we find that the bill avers, among other things:

"Your orator further avers that by section 2730 of the Revised Statutes of Ohio it is enacted that 'the term "credits" shall be held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable thing, or for labor or service due to, or to become due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of this state, other than such as are held to be money as hereinbefore defined, when added together (estimating every such claim or demand at its true value in money) over and above the sum of legal bona fide debts owing by such person'; and by section 2736 of the Revised Statutes of Ohio it is provided that every person required to list property for taxation shall deliver to the assessor annually a statement of all personal property, money, and 'credits' and other property in his possession or under his control on the day preceding the second Monday of April of that year, which he is required to list for taxation; and by section 2737 it is provided that such statement, among other things, shall truly set forth the amount of 'credits' possessed by such person, as that term is by the above recited statute defined. Your orator says that a large amount of moneyed capital in the hands of individuals, invested in promissory notes and other obligations and credits, is by the aforesaid provision, allowing deduction of legal, bona fide debts to be made therefrom, expressly exempted from taxation, thereby making an unjust and unlawful discrimination against moneyed capital invested in national bank shares, as to which no exemption or deduction is provided for by the laws of the state, which discrimination is in direct violation of the restrictions of said section 5219 of the Revised Statutes of the United States."

Then follow allegations as to the indebtedness of certain shareholders. The right is claimed to deduct the same from the value of their shares of bank stock. Again, in summing up the grounds of relief, complainant says:

"Your orator avers and insists that the taxes so levied and assessed against it on account of its said shares of stock are unjust, illegal, and void, for the following among other reasons: (1) That said tax is levied and assessed against your orator directly, and is in violation of the act of congress under which your orator is incorporated. (2) That the laws of Ohio authorize and permit the owner of credits to deduct therefrom all debts owing by him, and require him to list for taxation only the excess of credits over his indebtedness, and that such is the uniform practice throughout the state, and that under the laws of the same state the owner of capital stock of your orator is denied the right to deduct therefrom his indebtedness, but is required to list for taxation the whole number of shares owned by him, and not simply the excess over his indebtedness; and your orator insists that such discrimination results in the taxation of your orator's stock at much greater rate than is assessed upon other moneyed capital in the hands of individual citizens of Ohio."

In this statement we find the averment that the owners of credits are permitted to deduct their indebtedness, while the owners of bank stock are not thus favored. But the term "credits," as used in this part of the bill, must be taken in connection with the allegations of the bill which state the definition given by the statutes of Ohio of the term "credits," which shows such term to include the excess of sums of a limited class of moneyed capital over and above the indebtedness of individuals, and not to include moneyed capital in general. Upon this branch of the bill the question presented was whether the deduction permitted for the purpose of taxation of indebtedness from the limited class of capital named in the statute was an unlawful discrimination against the shareholders in national banks, within the meaning of the federal statute. The record shows that the decree making a general finding in favor of complainant in the Whitbeck Case was based on the

answers made·to a certificate of 'division of opinion in the circuit court, certifying certain questions to the supreme court,—among .others, whether the taxation of national bank shares in the state .of Ohio in 1885, without permitting the shareholder to deduct from ·the assessed value of his shares the amount of his bona fide indebtedness existing on the Wednesday next preceding the second Monday in April, 1885, is a discrimination forbidden by act of congress, the said shareholders not having deducted said bona fide indebtedness from any credits owned by them at either of said dates; and whether the demand for such deduction, first made on the 17th day of December, 1885, was sufficiently early to entitle complainant's shareholders thereto. In this certificate of division of opinion it is also stated that the laws of Ohio make no provision for the deduction of the bona fide indebtedness of any shareholder from ·the shares of his stock, and provide no means by which said deduction can be secured. Upon this certificate of division of opinion Whitbeck v. Bank was decided in the supreme court. It was therein held that the increase of valuation of the shares of stock of complainant from 60 per centum to 65 per centum was a discrimination such as is forbidden by section 5219 of the Revised Statutes of the United States. ' In deciding the other proposition the supreme court, assuming that the Ohio statute regulating assessments for taxation allow an owner of moneyed capital other than shares in a national bank to have a deduction equal to his bona fide indebtedness from the amount of the assessment of the value of such moneyed capital, but that no similar provision was made in favor of shares in a national bank, held the owners of such shares are entitled to a similar reduction, and that the right to make the demand therefor was not lost because of the delay in making the demand until after the process of equalization of the value of the shares for taxation is completed, and the tax duplicate is delivered to the treasurer for collection. The question made in the bill was whether the deduction of indebtedness from a limited class of capital, as defined in the Ohio statute, was an unlawful discrimination. The proposition decided by the supreme court was, assuming the Ohio statute to be different from what the bill declared it to be, and that it provided that moneyed capital, with the single exception of national bank shares, might have such deduction, it afforded an unlawful discrimination against such shareholders, within the meaning of the federal statute. In other words, the supreme court decided the question upon an erroneous assumption, not based on the allegations in the bill of complaint or certified in the questions submitted. The general decree in favor of the bank in that case can be supported by the unlawful discrimination in the increased valuation of the shares of the bank. The real question made under the statutes of Ohio, as they in fact existed, was not passed upon by the supreme court of the United States in that case. We think we have a right to look to the opinion to ascertain what was decided by the supreme court. Closing the same, Mr. Justice Miller says:

, "These principles require the affirmance of the decree of the circuit court, and, while there will be found in them a sufficient answer to the questions

certified by the judges of that court, we do not think it necessary to make a more specific answer to each of them. The decree is affirmed."

The decree could stand, under the finding, in favor of the bank upon the other proposition. We think the supreme court has decided a proposition not made in the bill, and not set forth in the certificate of division of opinion. While it is said in that certificate that the laws of Ohio make no provision for deduction of debts by shareholders of national banks, there is no statement that such holders are the only owners of moneyed capital not entitled to such deduction. In the case of Bank v. Chapman, 173 U. S. 219, 19 Sup. Ct. 413, 43 L. Ed. 675, the supreme court say of the Whitbeck Case:

"It is stated, however, that this specific question has been otherwise decided in Whitbeck v. Bank, 127 U. S. 193, 8 Sup. Ct. 1121, 32 L. Ed. 118. If this were true, we should be guided by and follow that decision. Upon an examination of the case it is seen that the court gave chief attention to the question whether an increase in the value of the shares in national banks made by the state board of equalization, from 60 per cent. of their true value in money, as fixed by the auditor of Cuyahoga county, to 65 per cent., as fixed by the board (other property being valued at only 60 per cent.), amounted to such a discrimination in the taxation of the shareholders of such banks as is forbidden by the federal statute. It was held it did. Coming to the question of the deduction of bona fide indebtedness of shareholders, the court assumed that, under the statute of Ohio, owners of all moneyed capital, other than shares in a national bank, were permitted to deduct their bona fide indebtedness from the value of their moneyed capital, but that no provision for a similar deduction was made in regard to the owner of shares in a national bank; and it was held that the owners of such shares were entitled to a deduction of their indebtedness from the assessed value of the shares, as in the case of other moneyed capital. The point to which the court chiefly directed its attention related to the question whether a timely demand had been made for such deduction of indebtedness. It was held that it was made in time, for the reason that the court below expressly found that 'the laws of Ohio make no provision for the deduction of the bona fide indebtedness of any shareholder from the shares of his stock, and provide no means by which such deduction could be secured.' As a demand at an earlier period would have been useless, the court held it unnecessary. An examination of the statute of Ohio in regard to taxation shows that debts can only be deducted from credits, and how much of credits is moneyed capital is unknown. The case is not authority adverse to the principle we now hold. For the reasons already stated, we think the judgment in this case should be affirmed."

In view of the foregoing comments on the decision in the Whitbeck Case, and the erroneous assumption therein of the character of the Ohio statute, we are not prepared to say that the judgment in that case was res adjudicata as to the rights of complainant's stockholders to deduct their debts from their shares of national bank stock.

A different question is presented by the allegations of former adjudication in the bills filed in 1893 and 1894. In those bills it was sought to enjoin the treasurer from collecting taxes upon the shares of complainant bank without permitting deduction for bona fide debts; it being averred that by section 2730 of the Revised Statutes of Ohio it is enacted that the term "credits" "shall be held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable things or for labor or service due or to become due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of this state other than

105 F.—52

such as are held to be money as hereinafter defined, when added together (estimating every such claim or demand at its true value in money), over and above the sum of legal bona fide debts owing by such persons."

"The complainant further says that a large amount of moneyed capital in the hands of individual citizens of the state, and of said county of Cuyahoga and state of Ohio, city of Cleveland, invested in promissory notes and other legal obligations, securities, claims, and demands, is by the aforesaid provision, allowing a deduction of legal, bona fide debts to be made therefrom, expressly exempted from taxation, thereby making an unjust and unlawful discrimination against moneyed capital invested in national bank shares, as to which no exemption or deduction is provided for by the laws of the state, which discrimination is in direct violation of the restrictions of section 5219 of the Revised Statutes of the United States, which provides that 'the taxation shall not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of such state.'"

This is a distinct allegation that this statute works an unlawful discrimination in favor of the holders of credits under the laws of Ohio, in permitting the holders of a class of capital to have a deduction denied to holders of shares in national bank stock. It was further alleged in those bills as follows:

"The complainant further avers that heretofore, to wit, at a date prior to the April term of this court, in the year 1887, the complainant brought suit against Horatio N. Whitbeck, as treasurer of said Cuyahoga county, who then held such office, to enjoin the collection of the excessive taxation of shares of said complainant growing out of the refusal of the taxing officers of said county to allow the deductions of bona fide debts of stockholders from the assessed value of said shares, said Whitbeck then representing the same interest, sustaining the same relations, and charged with the same duties to the public as does the present defendant; and in said suit this complainant alleged by its bill the refusal by the then auditor of said county to allow a deduction of bona fide debts of the shareholders from the value of shares of stock of said complainant owned in large part by the same stockholders as those above named, and in which action said treasurer of said county, admitting said refusal to allow said deduction, so joined issue as to present the question of the rights of said owners of said shares to said deduction, in view of the laws of Ohio; and the said laws being the same as the present laws of the state, and those under which the taxing officers of said county acted in 1892 and 1893, in making assessments and in refusing deductions to be made of bona fide debts of stockholders from the valuation of said shares; and the complainant says that, upon the issue so joined, the said court, at its April term, A. D. 1887, held and determined that said shareholders were by law entitled to said deduction of bona fide debts from the value of their said shares to an equal amount fixed for taxation; and in said action the court gave judgment perpetually enjoining said treasurer from collecting or attempting to collect any tax or assessment on the valuation of said shares to an amount equal to said debts from which said deduction was sought to be made and disallowed by said auditor, on the ground that said disallowance was a discrimination against money invested in national bank shares, prohibited by the act of congress; and the complainant alleges that said issue, so determined and adjudged, was between the same parties, involved the same subject-matter and legislation, and the judgment therein given remains wholly unreversed, and is still in full force and operation."

The treasurer demurred to this bill, and the demurrer was overruled. The defendant electing to stand by his demurrer, a final decree was given, enjoining the tax levied on the amount assessed equaling the shareholders' indebtedness; the allegations of the bill having been found to be true. The bill above quoted from was

brought to enjoin the collection of the June taxes for 1893, and a like bill was filed to enjoin the collection of the December tax of the same year. A similar course of procedure was had, and the court found each and every allegation of the bill to be true, and entered a decree accordingly. The learned judge in the circuit court held that the former adjudications depended upon the discriminations of those years sued upon, in view of the taxation levied in each particular year upon bank shares and other capital in this state, and consequently the adjudications were only as to conditions of fact existing in those years, respectively. But these bills made the question as to the effect of the Ohio statute permitting indebtedness to be deducted from credits, as the same were defined therein. The attack under those bills was upon the Ohio system of taxation, as authorized by section 2730. It was set up that the statute, which was copied in the bill, discriminated against the holders of national bank stock, in permitting indebtedness to be deducted from the demands named in the statute, and not against national bank stock. Credits, which are arrived at by permitting the debts to be deducted from certain capital, exist in the state every year. A discrimination as alleged was not based upon the operation of the law for any particular year, but upon the system of taxation applicable to every year. It would make no difference that in some years credits would make a greater volume of taxable property than in others, so far as the allegations of the bill in this respect are concerned. It is true, since the decision in the Chapman Case, 173 U. S. 205, 19 Sup. Ct. 407, 43 L. Ed. 669, it is established that the taxation of national bank shares in the same manner as other shares of capital stock in state banks, not giving them the privilege of deducting their indebtedness, as is given to a limited class of capital in arriving at taxable credits, in the absence of a showing that such credits constitute so great a portion of the taxable property of the state in capital coming into competition with that invested in national bank shares as to amount to a discrimination against holders of such shares. But the principle of the decision in the Chapman Case must not be confused with the right of a person to plead a former adjudication, if the former adjudication has the identical parties and questions determined to make it res adjudicata. We have shown what the allegations in respect to the permitted deduction under the Ohio law were in the bills filed in 1893 and 1894. In the present case the bill claims this discrimination in favor of the holders of credits, and is ample to permit proof and finding of facts which would support the allegations of the former bill. In the present case the master expressly finds:

"In the year 1897 a large amount of moneyed capital in the hands of individual citizens of the state, invested in promissory notes and other obligations and credits, was by section 2730 of the Revised Statutes of Ohio authorized to be exempted from taxation through the deductions therefrom of legal bona fide debts."

We may take judicial notice of the fact that the statute, at the time of the filing of the present bill, and the report of the master upon which the decree was entered, is the same as it was when

the former decrees were given upon the bills of 1893 and 1894. Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. Ed. 535; Gormley v. Bunyan, 138 U. S. 623, 11 Sup. Ct. 453, 34 L. Ed. 1086. The United States statute (section 5219) preventing discrimination against holders of shares of national bank stock is the same now as then, and has remained unchanged. We find that upon this branch of the case the allegations and findings of the master bring the case within the allegations of the bills of 1893 and 1894. It is true, the master finds other facts, from which he states he is unable to reach a conclusion which would show discriminations against national bank stock in favor of the classes of capital which come in competition therewith so as to give the complainant the right to an injunction, within the principles laid down in the Chapman Case. This does not affect the fact that he makes a finding which fully supports the allegation of the bills filed subsequent to the Whitbeck Case, and before the Chapman Case was decided. We then have a former adjudication in which it was held, upon this branch of the bill, that the deduction allowed under section 2730, Rev. St. Ohio, worked a discrimination against the holders of national bank shares. This being the effect of that adjudication, it is decisive between the parties when applied to subsequent years; the statute remaining the same, and the right of the party to the deduction being based upon the same principle, and arising from facts and conditions bringing the case within the right determined in the prior adjudication. This conclusion is supported by the decision of the supreme court of the United States in the case of City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202. In that case it was held that the judgment of a court in Louisiana of superior jurisdiction upon the issue, duly raised by the pleadings, whether the bank was exempt by contract with the state from taxes assessed against it for particular years, concluded that question, as between the same parties and their representatives, in respect of taxes assessed against it for subsequent years. The court said:

"The proposition that, because a suit for a tax of one year is a different demand from the suit for a tax for another, therefore res adjudicata cannot apply, while admitting in form the principle of the things adjudged, in reality substantially denies and destroys it. The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties and their privies."

The opinion of Mr. Justice White in that case is a thorough and elaborate discussion of the doctrine under circumstances closely akin to those of the present case.

One ground of relief in the bills of 1893 and 1894 was predicated upon the former adjudication set forth in that respect in the parts above quoted. The demurrer confessed the allegations of the bills. Judgment rendered upon demurrer has been held by the supreme court of the United States as decisive as a verdict upon the same facts would be. Facts established by such an adjudication

are conclusive between the parties and those in privity with them. Bissell v. Spring Valley Tp., 124 U. S. 225, 8 Sup. Ct. 495, 31 L. Ed. 411. It is true that estoppels must be certain, and, if the confession of the demurrer left other parts of the bill not available here as a plea of res adjudicata which could support the former decree, the estoppel would not be shown. We have seen that the facts pleaded in the former bill as a basis of relief are identical with the facts as found by the master in this case. As to the plea of former adjudication, the bill distinctly alleged that the decree in the Whitbeck Case had held the discrimination made by the Ohio statute to be unlawful, within the statute of the United States, and that it had been adjudicated therein that national bank shareholders were entitled to deduct their debts from the value of their shares for the purposes of taxation. The treasurer saw fit to stand upon his demurrer. Within the principle established in the Chapman Case, he might have made issues which would have produced a different result; but the question now is, is this former judgment in full force so identical with the present case that the judgment therein is decisive upon the parties here? We think it is. It is said in Bigelow, Estop. (3d Ed.) p. lxi., quoted with approval by Mr. Justice White in City of New Orleans v. Citizens' Bank of Louisiana, supra:

"Matters once determined in a court of competent jurisdiction may never again be called in question by parties or privies against objection, though the judgment may have been erroneous, and liable to and certain of reversal in a higher court."

We, therefore, cannot escape the conclusion that the former adjudications in the cases of 1893 and 1894 are conclusive between the parties, notwithstanding the subsequent decision of the supreme court in the Chapman Case. In reaching a contrary conclusion, we think the master, as well as the circuit court, erred. The judgment will be reversed, and the cause remanded, with instructions to enter a decree in favor of complainant in accordance with the views herein expressed.