## ACTION FOR COLLECTION OF DELINQUENT PERSONAL TAXES.

HULL v. ALEXANDER, TREASURER.

69 Ohio State—Decided, October 13, 1903.

*Collection of Delinquent Taxes—Action by County Treasurer—M ʌꜱ be for Taxes on Duplicate—Section 2859, Revised Statutes.*

The action by the county treasurer for the collection of delinquent personal taxes authorized by Section 2859, Revised Statutes, must be for taxes standing charged on the duplicate of the current year, or the delinquent duplicate.

Error to the Circuit Court of Crawford County. ,

On the sixteenth day of January, 1901, W. L. Alexander, then Treasurer of Crawford County, began his action against J. C. F.

Hull for the recovery of $1,048.20, taxes and penalty claimed to be due to said county from said Hull for delinquent taxes on shares owned by said Hull in the Second National Bank of Bucyrus, Ohio, which shares had been returned by the cashier to the county auditor for taxation, and the valuation and taxes by him placed on the duplicate for the years 1892, 1893, 1894 and 1895, taxes claimed for the year 1892, $198.14, penalty, $19.81; for the year 1893, taxes, $166.05, penalty, $16.61; for the year 1894, taxes, $275.07, penalty, $27.51; and for the year 1895, taxes, $313.65, penalty, $31.36; total taxes claimed, $952.91, penalties, $95.29, making in all, $1,048.20.

Mr. Hull refused to pay the full amount of these taxes, claiming that he was entitled to deduct his debts from the value of his national bank shares, and so the matter stood until in August, 1895, the board of county commissioners, by resolution adopted and recorded, empowered the then county treasurer, John Blyth, to compromise and settle all doubtful claims for taxes due and unpaid September 15, 1895, in such way as to him should appear best, and from time to time report to the board his doings for its approval.

Under this resolution the then treasurer and Mr. Hull effected a compromise and settlement of the taxes on said bank shares. Mr. Hull making an affidavit as to the amount of his indebtedness, and the treasurer deducting that amount from the valuation of the bank shares and ascertaining the amount of tax on the balance left for the years 1892, $39.00; 1893, $32.40, and 1894, $124.55; total, $195.95, which sum Mr. Hull paid to Mr. Blyth, the then treasurer, on the eleventh day of January, 1896, and took a receipt therefor from the treasurer, and which receipt is as follows:

"TREASURER'S OFFICE,

"CRAWFORD CO., OHIO, BUCYRUS.

"Received of J. C. F. Hull the whole installment of taxes charged for the years 1892, 1893 and 1894, on the following property in Bucyrus township, to-wit: (Here follows the years, valuation, rate, and taxes on said shares).

"The above sum is received in settlement of delinquent taxes on national bank shares owned and retained by J. C. F. Hull, and is for the sum found due to the county treasurer after deducting from the par value of said bank shares the bona fide

debts of the owner, having filed his affidavit of said indebtedness, and having made his claim for deductions under the national banking laws of the United States.

"JOHN BLYTH,
"*County Treasurer.*"

This settlement was made while the treasurer had the duplicate of 1895 in his hands for collection, and the delinquent taxes of 1892, 1893 and 1894 had been carried forward upon that duplicate. As the taxes of 1895 were also on the same duplicate, but not yet delinquent, it is not clear why they were not settled and paid at the same time. But the record shows that they were allowed to remain unpaid until December 30, 1896, when they were settled and paid, as shown by the following receipt:

"No. 2025.

"TREASURER'S OFFICE,
"CRAWFORD CO., OHIO, BUCYRUS.

"I, ———, received of J. C. F. Hull the whole installment of taxes charged for the year 1895, on the following property in Bucyrus township, to-wit: * * *

"The above is in full settlement of taxes charged against J. C. F. Hull on national bank stock, said Hull having filed affidavit of his indebtedness and asked the same to be deducted from the par value of said bank shares under the national banking laws, and said amount being the true amount found due the county after said deductions were made.

"Delinquent.

"1895. Value, $4,500; amount of tax, $124.20.

"JOHN BLYTH.
"*County Treasurer Collector.*"

After the settlement and payments, as above shown, no part of the taxes sued for was carried forward or placed upon the duplicate delivered by the county auditor to the county treasurer for any of the years subsequent to said payments, and said taxes so sued for did not appear on the duplicate for the year 1900, being the duplicate in the hands of the county treasurer at the time he commenced his action on January 16, 1901.

Mr. Hull in his answer pleaded these settlements and payments as conclusive, and also claimed that the treasurer had no power to sue for or collect taxes not on his duplicate for the current year, and that at least he should have credit for the amounts paid to the treasurer.

The treasurer claimed that the said settlements were void for want of power in the parties to make the same, that he could sue for any taxes at any time lawfully assessed and standing unpaid upon any duplicate, whether for the current year or any past years, and conceded that Mr. Hull should have credit for the amounts paid.

The above are the conceded and controlling facts.

The case was tried to a jury, and many questions raised upon the introduction of testimony especially as to the old duplicates, but which need not be specially noticed in this opinion, as we dispose of the case upon the question of the power of the treasurer to maintain the action.

At the close of plaintiff's testimony the defendant made a motion to the court in effect to arrest the testimony from the jury, and to direct a verdict in his favor for the reason that the action is not authorized by statute upon the duplicates of the dates mentioned in the plaintiff's petition; and for the further reason that the evidence offered by the plaintiff was not sufficient to entitle the plaintiff to a verdict in his favor.

The court overruled the motion, and the jury brought in a verdict in favor of the plaintiff for $728.05. A motion for a new trial was overruled, and judgment entered on the verdict. Proper exceptions were taken throughout the trial. The circuit court affirmed the judgment. Thereupon the cause was brought here for the purpose of reversing the judgments of the courts below.

*Harris & Sears,* for plaintiff in error.
*Finley & Gallinger,* for defendant in error.

BURKET, C. J.: DAVIS, SHAUCK and PRICE, JJ., concur.

It is clear that Mr. Hull had no right to deduct his debts from the valuation for taxation of his national bank shares, during the years 1892 to 1895, both inclusive, and that the state of Ohio during said years did not recognize such right, and did not accept the case of *Whitbeck* v. *Mercantile National Bank,* 127 U. S., 193, as deciding that such right existed, but on the contrary held that such right did not exist, and in such holding the state has been upheld by the Supreme Court of the United States. *Niles* v. *Shaw,* 50 Ohio St., 370; *Chapman* v. *Bank,* 56 Ohio St., 310; *Bank* v. *Chapman,* 173 U. S., 205; and *Bank* v.. *Ayers,* 160 U. S., 660.

The question as to whether debts are required by the federal statute as to national banks, to be deducted from the valuation of shares in a national bank for taxation is a federal question, and has been finally settled by the Supreme Court of the United States, but the manner in which a state shall regulate its internal tax system is not a federal question, and so long as shares in a national bank are not taxed at a higher rate than other moneyed capital, the federal courts can not interfere, even though they might think that the state system of taxation was unjust and oppressive. So long as the injustice and oppressions rest equally on national bank shares and other moneyed capital, the remedy must rest with the state. *Kirtland v. Hotchkiss*, 100 U. S., 498; *Memphis Gas Light Co.* v. *Shelby Co.*, 109 U. S., 398.

There has therefore been no change in the judicial holdings in this state as to the taxation of shares in a national bank for the years in question, and while some county auditors may have followed the rule supposed to be laid down in the Whitbeck case, the subsequent case of *Bank* v. *Chapman*, 173 U. S., 265, shows that there was an erroneous construction of the Whitbeck case; and an erroneous construction of a former decision will not serve to protect those who have acted under and in pursuance of such error, and can not serve as *stare decisis* because such decision, when properly construed, never stood, and does not now stand. It is urged that Mr. Hull could have enjoined this tax under the Whitbeck case, but that this is not so, is shown by the fact that Mr. Niles failed in his case, as did also Mr. Chapman in his, and both relied upon the Whitbeck case.

It is therefore clear that at the time of these two settlements Mr. Hull owed the full amount of taxes then standing on the duplicate against him. Whether the first settlement had sufficient validity to bar a further collection may well be doubted, but it is clear that it induced the auditor to omit the unpaid portion of the taxes from all subsequent duplicates. The taxes of 1895 did not become delinquent until June 20, 1896, and were not included within the authority of the resolution of the commissioners of August 6, 1895, because that resolution only covered taxes due and unpaid on the fifteenth day of September, 1895. It would seem, then, the treasurer had no authority to make the settlement of December 30, 1896; but he did make it, and received the money from Mr. Hull, and gave him a receipt

therefor as above shown; and that settlement, though it may have been unauthorized, induced the county auditor to omit the unpaid portion of the taxes from the next duplicate, and he never thereafter placed said unpaid taxes upon any duplicate. After the treasurer had received and collected the duplicates for the years 1897, 1898, 1899, and had in his hands for collection the duplicate of 1900, all without said unpaid taxes being entered upon any of them by the county auditor, the county treasurer brought this action for the collection of unpaid taxes which had not been on any duplicate after the years 1895 and 1896, and which duplicates had been settled between the county auditor and country treasurer as provided by Sections 1043, 1044, and 1115, Revised Statutes, and no longer remained in his hands for collection, and with which he was no longer charged by the county auditor.

If the county treasurer could maintain an action on such old duplicates, which had been thus settled, and from which he had been discharged from liability, it must be by virtue of some statute; because an officer, as a general rule, can maintain an action in his official capacity for the collection of public funds, only when authorized by statute.

By Section 2855, Revised Statutes, the county auditor is required to make a delinquent tax list or duplicate, immediately after the August settlement, and deliver the same to the county treasurer on the fifteenth day of September, annually.

By Section 2856, Revised Statutes, the treasurer is required to proceed forthwith to collect the taxes and penalty on *said* duplicate by any of the means provided by law, which would include a collection by civil action. But in the case at bar the civil action was not founded on *"said duplicate,"* that is the delinquent duplicate, but upon certain old defunct duplicates no longer in the hands of the treasurer for collection. The action was therefore not authorized by said Section 2856.

It is urged, however, that the action is authorized by Section 2859, Revised Statutes. That section is as follows:

"When any personal taxes, heretofore or hereafter levied, shall stand charged against any person, and the same shall not be paid within the time prescribed by law for the payment of such taxes, the treasurer of the county, in addition to any other remedy provided by law for the collection of such personal taxes,

is hereby specially authorized and empowered to enforce the collection by a civil action in the name of the treasurer of such county against such person for the recovery of such unpaid taxes; and it shall be sufficient, having made proper parties to the suit, for such treasurer to allege in his bill of particulars or petition that the said taxes stand charged upon the said duplicate of said county against such person, that the same are due and unpaid, and that such person is indebted in the amount appearing to be due on said duplicate, and such treasurer shall not be required to set forth in his petition any other or further special matter relating thereto, and said tax duplicate shall be received as *prima facie* evidence on the trial of said suit of the amount and the validity of such taxes appearing due and unpaid thereon, and of the non-payment of the same, without setting forth in his bill of particulars or petition any other or further special matter relating thereto; and if, on the trial of the action, it shall be found that such person is so indebted, judgment shall be rendered in favor of such treasurer so prosecuting such action as in other cases; and the judgment debtor shall not be entitled to the benefit of the laws for stay of execution or exemption of homestead, or any other property, from levy or sale on execution in the enforcement of any such judgment.''

This section was originally passed March 31, 1877, and was entitled, ''An act to secure the collection of delinquent taxes.'' It was slightly amended May 11, 1878, and carried into the Revised Statutes of 1880, and has remained the same ever since. It will be noticed that it provides for the collection of personal taxes which were levied either before or after the passage of the act, and stand charged against any person, and not paid within the time prescribed by law—delinquent personal taxes. When personal taxes stand charged against any person, means charged upon some duplicate in the hands of the treasurer for collection, and not upon some old defunct duplicate. This clearly appears from what follows, ''and the same shall not be paid within the time prescribed by law for the payment of such taxes.'' This implies a charge against a person which can be discharged by simple payment without invoking any other process or requirement; and the only charge against a person in favor of the treasurer that can be so paid is a charge upon the current duplicate or delinquent list in his hands for collection. This is made clear by Sections 1084 and 1085, Revised Statutes. Section 1084, after requiring the treasurer to keep on account of all moneys received and paid out by him, provides that, ''no

money received for taxes charged on the duplicate of the current year, shall be by the treasurer entered on his account with the county, until he has made his semi-annual settlement with the county auditor.'' And Section 1085 provides that: ''All payments of money into the county treasury of every description, except the payment of taxes charged on the duplicate, and made before the return by the treasurer of the delinquent list for unpaid taxes, shall be paid to the county treasurer on the draft of the county auditor, in favor of the treasurer.''

It is made clear by this section that payment of taxes standing charged on the duplicate of the current year can be made to the treasurer direct without warrant or draft from the county auditor, because the duplicate is his warrant for receiving the same; and it is further clear that payment of taxes standing charged on the delinquent duplicate can be made direct to the treasurer until the return by the treasurer of the delinquent list, but that after the return of the delinquent list payment can be made only upon the warrant or draft of the county auditor; because after the return of the delinquent list the treasurer has no warrant or duplicate in his hands for collection, and in case payment of taxes should then be made to him, the auditor would have no account thereof; and therefore in order to keep the proper charge against the treasurer, the statute requires that he have either a duplicate or draft from the auditor authorizing him to receive the money; and such duplicate, whether of the current year or of delinquent taxes, and such draft, enable the auditor to have in his office at all times a charge against the treasurer for all money paid to him.

In all our tax legislation the only duplicates mentioned are the duplicate of the current year and the delinquent duplicate, and all charges of taxes are required to be kept on one or the other of such duplicates; and nothing is provided as to collections or actions on old duplicates of former years, and therefore the words ''said duplicate'' in Section 2859 must be construed as referring to the duplicate of the current year or the delinquent duplicate.

Again, the county treasurer is strictly a collector of taxes, and not a tax inquisitor or taxing officer. He performs his whole duty when he collects the money charged upon the tax duplicate and delinquent list delivered to him by the auditor for collection,

or charged upon a warrant or draft delivered to him by the auditor authorizing him to receive money; and he is not authorized by statute to hunt up and collect old stale claims not placed on the duplicate or delinquent list of the current year by the auditor. The auditor is the taxing officer, and the treasurer the collecting officer.

When people have so arranged their taxes, either by payment or otherwise, as to have the charge removed from the duplicate, the place to begin to have such taxes again placed on the duplicate and made a charge against such person, is in the office of the auditor; and the treasurer has no authority to revive, sue for, or collect such taxes, until again placed on the duplicate by the auditor.

It is therefore clear upon the conceded facts in this case, that the treasurer had no power or authority to bring or maintain this action; that the court erred in admitting the old duplicates in evidence; and erred in overruling the motion of defendant to arrest the testimony from the jury, and for judgment in his favor.

The judgment of the circuit court, and also that of the common pleas, will be reversed, and the said motion of the defendant below will be sustained and the petition dismissed.

Whether at this late day the auditor can place the unpaid portion of Mr. Hull's taxes on the duplicate so as to enforce their payment, is not involved in this case, and is not here decided. No attempt has been made by the auditor to again place said unpaid taxes on the duplicate. Should such attempt be made, it will then be proper to decide the question. The question is not now before us. Neither is the validity or invalidity of said settlements decided. The treasurer not having the power to bring the action on the old duplicates, he could not in any unauthorized action test the validity of the settlements.

*Judgments reversed and judgment for plaintiff in error.*