MERCANTILE NAT. BANK OF CLEVELAND, OHIO, v. HUBBARD,
County Treasurer.

(Circuit Court, N. D. Ohio, E. D.   December 23, 1899.)

No. 5,714.

**1. TAXATION—JURISDICTION TO ENJOIN COLLECTION OF TAX—VALIDITY OF ASSESSMENTS.**

A court of equity cannot enjoin the collection of a tax on the ground that it was assessed without due notice to the complainant, unless it is also made to appear that it is greater than should have been assessed, so that upon a hearing he would have been entitled to a reduction of the amount.

**2. SAME—NATIONAL BANK SHARES—DISCRIMINATION.**

The provisions of the statutes of Ohio permitting the deduction of indebtedness from "credits" for purposes of taxation do not constitute discrimination in favor of other moneyed capital, as against shares in national banks, within the meaning of Rev. St. § 5219, merely because such credits are defined to include deposits in savings banks and shares in building and loan associations, and in the absence of proof that such statutes in fact operate to exempt from taxation moneyed capital which comes into competition with the business of national banks.

**3. JUDGMENTS—RES JUDICATA.**

A decree in a suit against a county treasurer finding that taxes levied upon shares in a national bank were excessive and invalid because the assessments made under the state statutes discriminated against such shares, in favor of other moneyed capital, necessarily rested upon a determination of the question of fact as to the practical operation of such statutes, as shown by the evidence, and is not a conclusive adjudication between the parties of the invalidity of taxes levied upon such shares, under the same statutes, in a subsequent year, when the conditions which rendered the former assessment illegal may not have existed.

## In Equity.

This case comes before the court on exceptions to the report of the master. The bill was filed by the Mercantile National Bank of Cleveland, Ohio, a banking corporation organized under the laws of the United States, and doing business in the city of Cleveland, to enjoin the county treasurer of Cuyahoga county, Ohio, from collecting taxes assessed against the holders of the shares of its capital stock, on the ground that the taxes thus assessed violate section 5219 of the Revised Statutes of the United States, which provides that the taxation of national bank shares shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state. The bill avers that the auditor of Cuyahoga county assessed the total 10,000 shares, of the par value of $100 each, in the complainant bank, at $519,320; that the state board of equalization for banks increased this valuation to $642,320; that this increase was made without notice to the complainant bank, and without giving it an opportunity to be present; that the increase by the state board of equalization was from 60 per cent. to 74 per cent. of the true value of the shares of stock; that the assessed value of other moneyed capital in the hands of citizens of Cuyahoga county and the city of Cleveland does not exceed 60 per cent. of the true value; that the state board of equalization knowingly and designedly made this discrimination against the complainant. The bill further avers that by section 2730 of the Revised Statutes of Ohio, under the title "Taxation," the term "credits" is held to mean the excess of the sum of all legal claims and demands, whether for money or other valuable things, or for labor or services, due or to become due to the person liable to pay taxes thereon, including deposits in banks or with persons in or out of this state, other than such as are held to be money, when added together (estimating every such claim or demand at its true value in money), over and above the sum of legal, bona fide debts owing by such person; that a large amount of moneyed capital

98 F.—30

in the hands of individual citizens of the state of Ohio, invested in promissory notes and other legal obligations, is by the aforesaid provision, allowing legal, bona fide debts to be deducted therefrom, expressly exempted from taxation; that at least $200,000,000 of credits were exempted by this provision; that the shares of building and loan associations created under the laws of Ohio are by law to be considered as credits, and held as such; that thereby $70,000,000 was by statute exempted from taxation; that such building and loan associations are empowered to borrow and loan money, and do a general banking business with their members and depositors. The bill then avers that a number of shareholders in the complainant corporation owe debts which have not been deducted from the value of their shares, though the evidence of such debts has been tendered to the county auditor. The averments of the bill are that $123,-000 should be deducted from the assessment of the state board of equalization, upon which taxes to the amount of $3,726.90 have been assessed, and that there should be deducted from said assessment, also, the amount of the indebtedness of the individual stockholders of the bank, which is such a sum that the tax assessed thereon, upon the valuation fixed by the county auditor, is $3,524.78. The complainant tendered the amount due, less the sum in dispute. The complainant further pleads a former adjudication between the complainant and Horatio N. Whitbeck, the predecessor of the defendant as treasurer of Cuyahoga county, in which it was adjudged, as between the parties, that the system of deduction of debts from credits under the statute of Ohio was a discrimination against the complainant bank, in violation of section 5219 of the Revised Statutes of the United States. The defendant answered, making an issue upon the fact of notice to the complainant of the hearing before the state board of equalization; an issue upon the averments as to the discrimination arising from the operation of the statutes of Ohio, in allowing debts to be subtracted from credits; and an issue denying the effect claimed for the former adjudication between the complainant and the predecessor in office of the defendant.

The case was referred to a master, who has made a report. He finds that no sufficient notice was given to the complainant bank of the intention to increase the assessment. He finds that the board of tax remission, organized under section 167 of the Revised Statutes of Ohio, had no authority to consider the action of the state board of equalization for banks, although it was composed of the same persons. He finds that about 1,479 of the bank's shares are held by persons whose indebtedness, over and above all other credits, exceeds the par value of these shares. The master sets out at length a number of facts bearing upon the value of the stock of the complainant. He finds that the amount of capital stock of building and loan associations paid in 1896 amounted to $80,000,000; that the total number of shares in force was 1,389.059; that the total number of shares on which loans had been made was 410,000; that large amounts of money were loaned in this year of 1896 by building and loan associations to nonstockholders, in such manner as to bring it into competition with national banks, and which would properly be called credits; that the value of credits, after deducting bona fide debts, amounted to $99,000,000; that moneys invested in bonds, stocks, joint-stock companies, annuities, and otherwise, amounted to $7,600,000, and that the valuation of state banks, as fixed by the state board of equalization, was $8,400,000; that the individual deposits in savings banks in Cuyahoga county in 1897 amounted to $50,000,000; that real-estate mortgage debts in Ohio amounted to $259,000,000, and in Cuyahoga county to $21,000,000. The master says that there is no evidence before him to show what portion of the credits consists of moneyed capital in the hands of individuals which in fact enters into competition for business with national banks; that there is no evidence as to what the total moneyed capital in the hands of individual citizens, and included in the term "credits," amounts to; that he is unable to ascertain or report what proportion the moneyed capital of individuals included in the term "credits" bears to the amount invested in national bank shares; that he is unable to report whether there has or has not been any material discrimination, such as the federal statute was enacted to prevent, against said complainant, and in favor of other moneyed capital in the state, outside of Cuyahoga county. The report proceeds: "I find, however, the fact to be that in said year a large amount of moneyed capital in the hands of individual citizens of the state, invested in promissory notes and other obli-

gations and credits, was by section 2730 of the Revised Statutes of Ohio authorized to be exempted from taxation through the deduction therefrom of legal, bona fide debts. There is nothing in the evidence that will show whether shares of incorporated banks in the counties of the state outside of Cuyahoga county were valued for taxation by the auditors at a higher or lower percentage, compared with the true value in money of their stocks, than were the banks in Cuyahoga county; and hence the master is unable to report or find whether there was any unjust discrimination as between other incorporated banks and the complainant bank, and against the complainant bank. An examination of the valuation of shares of banks as returned to and fixed by the state board of equalization of bank shares for 1897 discloses the fact that the assessed valuation of shares of all incorporated banks in the state of Ohio in the year 1897, exclusive of real estate, as fixed by the state board of equalization, was 61⅔ per cent. of the aggregate capital stock, surplus, and undivided profits of such incorporated banks; that the assessed valuation of all national bank shares in Ohio in 1897, exclusive of real estate, as fixed by the county auditors of the state, was 58.5 per cent. of the aggregate capital stock, surplus, and undivided profits, as reported to said auditors, which said valuation was increased by the state board of equalization to about 59.5 per cent. of the said aggregate value of said capital stock, surplus, and undivided profits,—an increase of 1.6 per cent. on the valuation fixed by the auditors; that the assessed valuation of national bank shares in the state of Ohio for the year 1897, outside of Cuyahoga county, exclusive of real estate, as fixed by the county auditors of the state, was 58.9 per cent. of the aggregate capital stock, surplus, and undivided profits, as reported to such county auditors, which said valuation was decreased by the state board of equalization to 57.7 per cent. of said aggregate value of said capital stock, surplus, and undivided profits, being a decrease of a little more than two per cent.; that the assessed valuation of national bank shares in Cuyahoga county in 1897, exclusive of real estate, as fixed by the county auditor, was 56.4 per cent. of the aggregate of the capital stock, surplus, and undivided profits, as reported to the auditor, which said valuation was increased by the state board of equalization to 67.8 per cent. of the capital stock, surplus, and undivided profits of said banks, being an increase of a little more than 20.2 per cent. of valuation, while the increase of shares of the complainant bank was a little more than 23.6 per cent. I find that moneyed capital in the hands of individual citizens of the city of Cleveland and the county of Cuyahoga was assessed for taxation by the assessing officers of the county in the year 1897, and for a long time theretofore, as nearly as practicable, at sixty per cent. of its value, and that, as compared with other moneyed capital in said county, the value fixed by the auditor on the stocks of said bank for the purposes of taxation was fair and equitable. And I also find that the valuation placed upon the shares of complainant bank by the state board of equalization was much higher than that fixed on other moneyed capital in the hands of individual citizens and corporations in the county of Cuyahoga and city of Cleveland, and that such action of the board of equalization was an unjust discrimination against said complainants. Eighteenth. By stipulation signed by the parties to said cause, it was agreed that, if the court holds it competent to put in proof of taxation of moneyed capital and bank shares outside of Cuyahoga county, that there is no discrimination for counties outside of the county of Cuyahoga, in the state of Ohio, by the taxing officers of said counties, in fixing the valuations for the purposes of taxation upon moneyed capital as against shares in incorporated banks. Nineteenth. I find that on the day said statement was filed with the auditor the actual cash value of the shares of stock in complainant's bank was $128 per share, and that the value of the real estate of said bank, as it then stood upon the tax duplicate, was $117,370."

The master than files, as part of his report, a true copy of the record in the case of the Mercantile National Bank v. Horatio N. Whitbeck, Treasurer of Cuyahoga County, Ohio. In that bill of complaint it was averred "that the laws of Ohio authorize and permit the owner of credits to deduct therefrom all debts owing by him, and required him to list for taxation only the excess of credits over his indebtedness, and that such is the uniform practice throughout the state, and that under the laws of the same state the owner of capital stock of your orator is denied the right to deduct therefrom his indebtedness, but is

required to list for taxation the whole number of shares owned by him, and not simply the excess of the value of said shares over his indebtedness; and your orator insists that such discrimination results in the taxation of your orator's stock at a much greater rate than is assessed upon other moneyed capital in the hands of individual citizens of Ohio." Also, that "a large amount of moneyed capital in the hands of individuals, invested in promissory notes and other obligations and credits, is by the aforesaid provision, allowing deduction of legal, bona fide debts to be made therefrom, expressly exempted from taxation, thereby making an unjust and unlawful discrimination against moneyed capital invested in national bank shares, as to which no exemption or deduction is provided for by the laws of the state." The bill, after setting out the names of certain stockholders who claimed the right to deduct their bona fide debts from the value of their shares, further averred "that each of said above-named shareholders was indebted and owing to others, of legal bona fide debts, a sum in excess of the credits from which, under the laws of Ohio, he was entitled to deduct said debts to an amount equal to the value of said shares,  *  *  * which said excess of said debts over credits as aforesaid should be deducted from the assessed value of said shares so owned by him, and by reason of the facts above stated said shares of said stock should not have been placed on the tax duplicate, and no tax should have been assessed thereon;  *  *  * and your orator insists that, by reason of the premises above set forth, there should be deducted from the shares of capital stock owned by said shareholders above named, and now standing on the tax duplicate of said county, $285,500, the par value of the shares of said stock,—in all, the sum of $141,543.48, according to the assessed value thereof." The bill further averred as follows: "Your orator avers and insists that the taxes so levied and assessed against it on account of its said shares of stock are unjust, illegal, and void, for the following, among other, reasons: (1) That said tax is levied and assessed against your orator directly, and is in violation of the act of congress under which your orator is incorporated. (2) That the laws of Ohio authorize and permit the owner of credits to deduct therefrom all debts owing by him, and require him to list for taxation only the excess of credits over his indebtedness, and that such is the uniform practice throughout the state, and that under the laws of the same state the owner of capital stock of your orator is denied the right to deduct therefrom his indebtedness, but is required to list for taxation the whole number of shares owned by him, and not simply the excess of the value of said shares over his indebtedness; and your orator insists that such discrimination results in the taxation of your orator's stock at a much greater rate than is assessed upon other moneyed capital in the hands of individual citizens of Ohio." There was a general denial of these averments, and special denials as follows: "He [defendant] denies that any of the shareholders of said banking association at the times named in the said bill of complaint was indebted or owing to others of bona fide debts a sum in excess of the credits from which, under the laws of Ohio, he was entitled to deduct said debts, to an amount equal to the value of his said shares, or any part thereof. He denies that either of said shareholders was then indebted in any, sum whatever, or that, even if any of them was so indebted as claimed in said bill of complaint, he is thereby entitled to deduct the excess of such indebtedness over his credits from the assessed value of his said shares, or that for any reason said shares of stock should not have been placed on the tax duplicate, and no tax assessed thereon.  *  *  * He denies that any sum whatever should be deducted from the valuation of the shares of the capital stock owned by said shareholders named in said bill of complaint. He denies that the laws of Ohio authorize and permit the owner of credits to deduct therefrom all debts owing by him, or that such is the uniform practice throughout the state. He denies that the taxation of shares of said complainant's stock is at a much or any greater rate than is assessed upon other moneyed capital in the hands of individual citizens of the state. He denies that the necessary effect of the proceedings had in the assessment and levy of the tax standing against said complainant, and the shares thereof owned by its said shareholders, has been to deprive said complainant or said shareholders  *  *  * of any security denied them by the limitation of said act of congress."

A large amount of evidence seems to have been taken in the case, though that has not been produced in evidence here. The case was referred to a special master, and then came on for final hearing. A decree was entered, reciting that the court, being fully advised in the premises, from the testimony and exhibits, and the special master's report, adduced in open court, did find all the allegations of the bill to be true, except certain averments which are not here material, and enjoined the collection of $3,967 of tax assessed against the complainant.

As conclusions of law, the master in the present case found that the action of the state board of equalization in increasing the assessment was invalid, for want of notice to the bank, and that the state board of tax remission had no jurisdiction to set aside or reconsider that assessment. The master further found that the valuation of the auditor was 60 per cent. of the aggregate capital stock, surplus, and undistributed profits; that the state board of equalization increased this valuation to 70 per cent. of the aggregate capital stock, surplus, and undivided profits; that the valuation of property generally in Cuyahoga county was but 60 per cent.; and that this was a discrimination against the property of the bank of 10 per cent., which should be enjoined. The master further found that the decree in the Whitbeck Case was not a former adjudication of the issues in this case.

W. W. Boynton and Norton T. Horr, for complainant.
P. H. Kaiser and Fred L. Taft, for Cuyahoga County.
F. S. Monnett and S. W. Bennett, for the State of Ohio.

TAFT, Circuit Judge (after stating the facts as above). I am not able elaborately to state the reasons for my conclusions in this case. I think it better, in view of the fact that the case will certainly be appealed, that I should give a very summary statement of them.

Upon the first issue,—whether the action of the state board of equalization was invalid for want of notice,—I do not find it necessary to pass. The action of the state board was embodied in a report to the county auditor, and by him placed upon the duplicate, so that it now appears on the face of the duplicate as a lawful warrant for the collection of the tax.

This proceeding is a bill in equity to enjoin the collection of the tax on the ground that it was assessed without due notice to the complainant. If the tax assessed is no greater than ought to have been assessed, then the complainant is not in a position to ask the intervention of a court of equity, because, however irregular the action of the state board may have been, if the complainant cannot make it clear that by a hearing upon notice it would have been entitled to an assessment less than that which was made, the bill must be dismissed. The master finds that the actual market value of the stock is $128 per share. There are 10,000 shares of the stock, making a total valuation of $1,280,000. Sixty per cent. of this valuation would be $768,000. Deducting the assessed value of the real estate would leave a valuation of $650,630. The assessment of the state board is $642,000. It will be seen that the assessment of the state board of equalization is certainly only 60 per cent. of the actual value of the shares of stock in the market. The finding of the master is that there is nothing in the evidence to show whether the shares of incorporated banks in the counties of the state outside of Cuyahoga county were valued for taxation by the auditors at a higher

or lower percentage, compared with the true value of their stocks, than were the banks in Cuyahoga county; and hence the master is unable to report or find whether there was any unjust discrimination as between other incorporated banks and the complainant bank, and against the complainant bank. The other finding of the master, as to the percentage of the aggregate capital stock, surplus, and undivided profits assessed for taxable valuation by the state board of equalization, of all incorporated banks, and of all national banks and national bank shares outside of Cuyahoga county, therefore formed no basis for concluding what relation the assessed percentage of the aggregate capital the surplus and the undivided profits had to the market and actual value of the stock. I am unable to find, therefore, in the grounds upon which the master proceeded, any predicate for the assumption that the other banks in the state were taxed at any less than 60 per cent. of the actual market values of their shares; and, if they were not so taxed, then there is no ground for claiming that there was any discrimination in the action of the state board of equalization in assessing the value at 60 per cent. of its actual value. There is no better evidence of the actual value of bank shares than the market value. It seems to me that the findings of the master upon this point, therefore, are inconsistent; and the exception to them must be sustained. In that view, it becomes unimportant to decide, as already stated, whether or not the notice of the action by the state board of equalization was sufficient.

The next question is whether the operation of the statutory definition of "credits" to be returned for taxation in Ohio operates to discriminate in favor of other moneyed capital in the state against national bank shares. Upon this point the decision in the case of Bank v. Chapman, 173 U. S. 205, 19 Sup. Ct. 407, 43 L. Ed. 669, leaves no doubt. In that case it was held that the term "moneyed capital," as used in the federal statute, does not include capital which does not come into competition with the business of national banks, and that exemptions from taxation, however large, such as deposits in savings banks, or moneys belonging to charitable institutions, which are exempted from reasons of public policy, and not as an unfriendly discrimination against investments in national bank shares, cannot be regarded as forbidden by the federal statute. The court then proceeded:

"With no purpose to discriminate against the holders of shares in national banks, and with the taxation of the shareholders in the two classes of banks—state and national—precisely the same, the question is whether this system of taxation in Ohio, in its practical operation, does materially discriminate against the national bank shareholder in the assessment upon his bank shares."

The court then proceeded to treat the question of such discrimination as a question of fact, to be determined by the evidence, and reference was made to the report of the auditor to show what the total credits upon which taxation was laid, after deducting the debts allowed, were. It was pointed out that the deductions which might be made included deductions for many other things than what would be strictly moneyed capital, within the meaning of section 5219, and that there was nothing in the evidence then before the court

to enable it to say how much of these deductions was moneyed capital, within the meaning of that section. I do not find that there was anything more of substance before the master than there was before the supreme court upon this issue of fact. There is proof of the capital in savings banks, and also of the capital invested in building and loan associations; but, under the decision of Mercantile Bank v. City of New York, 121 U. S. 138, 7 Sup. Ct. 836, 30 L. Ed. 895, capital invested in savings banks cannot be regarded as moneyed capital, within the meaning of section 5219, exemption of which from taxation can constitute a discrimination within the inhibition of that section. It seems to me that building associations are certainly not to be differentiated in their purpose or object, or practical effect, from savings banks, and that the capital invested in them, though subject to a somewhat different rule of taxation, cannot be regarded as moneyed capital in competition with the moneyed capital in national banks, any more than is capital invested in savings banks. The chief object of building associations is to encourage the building of small houses by poor people, and the saving from their earnings, week by week, of an amount sufficient to pay the mortgage debts incurred in the purchase of the land and the construction of the house. The mere fact that every shareholder in a building association need not be a borrower cannot, I think, change the effect of the general purpose of the building association law. The general result of the evidence is no more satisfactory as showing what amount of discrimination, if any, there is by reason of this definition of "credits" in the Ohio statute of taxation, than it was in the case of Bank v. Chapman. For this reason I must conclude, as the master did, that the averments of the bill as to the discrimination, arising from the operation of this definition of "credits," against moneyed capital, is not such as to justify any action by the court in the complainant's favor.

There remains to be considered the question arising under the claim of former adjudication made in the bill. Upon the argument, and before I had made a close examination of the bill, my impression was that upon this claim of former adjudication the complainant must succeed. It seemed to me that the adjudication in the former case was a mere adjudication of the necessary operation of the statute of Ohio, as a matter of law, to discriminate against national banks, and therefore that, that question having been in judgment between the same parties, it must receive the same adjudication here. Looking into the bill, however, in the former case, and after an examination of the case of Bank v. Chapman, I find that, in order to support the averments of the bill, it was necessary in that case for the complainant to rely, not only upon the statute of Ohio defining "credits," but also on its practical operation in exempting moneyed capital in the hands of individuals in Ohio from taxation. The practical operation of a law of that character to show how much, if any, discrimination there is, is a question of fact to be determined upon the evidence. A large amount of evidence was taken in the former suit, and the court, in its decree, found the averments of fact as to the practical operation of the law of Ohio, in the bill, to be fully sustained. In other words, the court found the fact to be that for the years then involved the

statute of Ohio, as enacted, operated to exempt so large an amount of the moneyed capital in the hands of individuals in that state, as to discriminate against the holders of the complainant's shares, and result in the taxation of the stock at a much greater rate than was assessed upon other moneyed capital in the hands of individual citizens of Ohio. The adjudication, therefore, upon which the complainant relies, is an adjudication, not of law, but of fact,—not of the fact at issue in the present case, but of the fact as to the practical operation of the law at the time of that adjudication, to wit, in 1887, in 1893, and in 1894. In this aspect, the fact as to the practical operation of the law in 1896 may be different from that in 1887 and the other years. A finding of a condition in 1887 does not conclusively establish the existence of the same conditions in 1896 and 1897. For this reason, I cannot sustain the contention made on behalf of the complainant, that the former adjudication conclusively entitles the complainant to the same relief as that which was granted it in the Whitbeck Case. The exceptions to the master's report on this ground are therefore overruled. The result is that the preliminary injunction must be dissolved, and the bill dismissed at complainant's costs. The same order must be made in the other cases which it is agreed depend on this.