FIRST NATIONAL BANK OF GLENDIVE, Respondent,
v. COUNTY OF DAWSON et al., Appellants.

(No. 5,233.)

(Submitted January 3, 1923. Decided February 28, 1923.)

[213 Pac. 1097.]

*Taxation—National Bank Shares—Power of State to Tax—
Building and Loan Associations not Banking Institutions—
Discrimination in Taxation—What Does not Constitute.*

Taxation—Shares of National Banks—State may Tax—Proviso.
    1.   Under section 5219, United States Revised Statutes, shares of
    stock of national banks may be taxed by the state provided no un-
    friendly discrimination is made against such shares in favor of
    moneyed capital in the hands of individual citizens of the state,
    "moneyed capital" meaning capital employed in competition with the
    business of national banks.
Same—Building and Loan Association—State may Favor in Matter of
    Taxation.
    2.   It is the policy of the state to encourage and foster building and
    loan associations and it may, in furtherance of that object, favor
    them in the matter of taxation without its action in that regard
    being deemed an unfriendly discrimination against national banks.
Building and Loan Associations not Banking Institutions.
    3.   Building and loan associations are not banking institutions in
    any sense of that term, and do not in their lawful transaction of
    business come into any possible competition with national banks.
Taxation—National Bank Shares—Building and Loan Stock and Moneys
    —Discrimination—What Does not Constitute.
    4.   *Held*, in an action by a national bank to recover taxes paid
    under protest on the ground that while its shares were assessed on
    the basis of a forty per cent valuation under section 2000, Revised
    Codes of 1921, as falling within Class 6 therein, while the stock
    and moneys of a building and loan association were assessed at a
    seven per cent valuation under Class 5 of that section though the
    property of the association was employed in competition with plain-
    tiff bank, rendering the tax in excess of seven per cent discrimina-
    tory as to it and therefore void under the above rule (par. 1),
    that the contention was without merit, in view of rules 2 and 3
    above, and the record not showing that the moneyed capital of the
    association was employed in competition with the bank.

*Appeal from District Court, Dawson County; Frank P.
Leiper, Judge.*

    1.   State taxation of shares of stock of national banks, see notes
in 69 Am. St. Rep. 32; 45 L. R. A. 743; 3 L. R. A. (n. s.) 584.

ACTION by the First National Bank of Glendive against the County of Dawson and another. Judgment for plaintiff and defendants appeal. Reversed and remanded with directions to dismiss.

*Mr. Wellington D. Rankin,* Attorney General and *Mr. A. H. Angstman,* Assistant Attorney General, submitted a brief; *Mr. Rankin* and *Mr. William T. Pigott,* of Counsel, argued the cause orally.

The only question involved is whether the assessment of money and credits in the hands of individuals, and in the hands of the Building & Loan Association of Glendive, at seven per cent of their actual value, while the shares of stock and moneyed capital of plaintiff were assessed on the basis of forty per cent of their actual value, constitutes such discrimination against a national bank as is denounced by section 5219 of the Revised Statutes of the United States relating to the taxation by states of property of national banks.

Section 5219, U. S. Revised Statutes, prohibits discrimination as to moneyed capital only that comes into competition with national banks. (*First National Bank of Wellington, Ohio,* v. *Chapman,* 173 U. S. 205, 43 L. Ed. 669, 19 Sup. Ct. Rep. 407 [see, also, Rose's U. S. Notes]; *Commercial Nat. Bank* v. *Chambers,* 182 U. S. 556, 45 L. Ed. 1227, 21 Sup. Ct. Rep. 863; *Merchants Nat. Bank* v. *Richmond,* 256 U. S. 635, 65 L. Ed. 1135, 41 Sup. Ct. Rep. 519; *Aberdeen First Nat. Bank* v. *Chehalis County,* 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629; *Jenkins* v. *Neff,* 186 U. S. 228, 46 L. Ed. 1140, 22 Sup. Ct. Rep. 905; *National Redemption Bank* v. *Boston,* 125 U. S. 60, 31 L. Ed. 689, 8 Sup. Ct. Rep. 772; *Talbott* v. *Silver Bow County,* 139 U. S. 438, 35 L. Ed. 210, 11 Sup. Ct. Rep. 594; *Mercantile Nat. Bank* v. *New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *Baltimore Nat. Bank* v. *Baltimore,* 92 Fed. 239; *Mercantile Nat. Bank* v. *Hubbard,* 98 Fed. 465; *First Nat. Bank of Raton* v. *McBride,* 20 N. M. 381, 149 Pac. 353; *Head* v. *Board of Review,* 170

Iowa, 300, 152 N. W. 600; *Des Moines Nat. Bank* v. *City of Des Moines*, 153 Iowa, 336, 133 N. W. 767.)

The complaint does not state facts sufficient to constitute a cause of action. The complaint in this case does not allege facts showing or tending to show that the moneyed capital in the hands of individuals, which is assessed at seven per cent, comes into competition with the business of national banks within the meaning of the decisions of the supreme court of the United States above cited. Unless an individual uses his moneyed capital in the business of making short time loans, or in the business for which a national bank uses its capital, then we contend that, as a matter of law, his moneyed capital is not placed in competition with the moneyed capital or the business of a national bank. (*Mercantile Nat. Bank of N. Y.* v. *New York*, 186 U. S. 228, 30 L. Ed. 895, 22 Sup. Ct. Rep. 905 [see, also, Rose's U. S. Notes]; *First Nat. Bank* v. *Chehalis County*, 166 U. S. 439, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629; *Nat. Bank of Commerce* v. *City of Seattle*, 166 U. S. 463, 41 L. Ed. 1079, 17 Sup. Ct. Rep. 996; *Mercantile Nat. Bank* v. *New York*, 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826.)

So far as the proof shows, there is no real competition between the business of the bank and the building and loan association which, as above pointed out, is essential in order to invalidate a discriminatory tax. The language of the court in the case of *Jenkins* v. *Neff*, 186 U. S. 228, 46 L. Ed. 1140, 22 Sup. Ct. Rep. 905, is here pertinent.

*Messrs. Hurley & O'Neill*, for Respondent, submitted a brief; *Mr. C. C. Hurley* argued the cause orally.

National banks are instrumentalities of the federal government and any action of a state which impairs their efficiency as such governmental agencies or interferes with their legitimate business as banks is unconstitutional and void. (3 Michie on Banks and Banking, sec. 333, subdiv. 3; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 40 L. Ed. 700, 16 Sup. Ct. Rep. 502; *Larabee* v. *Dolley*, 175 Fed. 365.)

A state is wholly without power to levy any taxes, either direct or indirect, upon national banks, their property, assets or franchises, except when permitted to do so by legislation of Congress.    (3 Michie on Banks, sec. 334; *Owensboro Nat. Bank* v. *Owensboro,* 173 U. S. 604, 43 L. Ed. 851, 19 Sup. Ct. Rep. 537; *Old National Bank* v. *Berkeley County Court,* 58 W. Va. 559, 6 Ann. Cas. 115, 3 L. R. A. (n. s.) 584, 52 S. E. 494.)

In the absence of congressional action a state cannot tax any property of national banks and its property can only be taxed in any event to the extent that the general government has granted to the state permission to do so.    (*Daly Bank & Trust Co.* v. *Board of Commrs.,* 33 Mont. 101, 81 Pac. 950; U. S. Rev. Stats., sec. 5219; U. S. Comp. Stats. 1913, sec. 9784.)

It has become established that while the words moneyed capital in the hands of individual citizens, as used in section 5219, do not include shares of stock in corporations that do not enter into competition with national banks they do include something besides shares in banking corporations and others that enter into direct competition with these banks. They include not only moneys invested in private banking property so called but investments of individuals in securities that represent money at interest and other evidence of indebtedness such as normally enter into the business of banking. (*Merchants Nat. Bank of Richmond* v. *City of Richmond,* 256 U. S. 635, 65 L. Ed. 1135, 41 Sup. Ct. Rep. 519; *Evansville Bank* v. *Britton,* 105 U. S. 322, 26 L. Ed. 1053.)

It is argued by the defendants that the stock in the Glendive Building and Loan Association would not be classed as moneyed capital that comes into competition with the plaintiff bank in the business of banking and in support of their contention rely upon the decision rendered by Justice Taft while Circuit Judge of Ohio Circuit, in the case of *Mercantile Nat. Bank* v. *Hubbard,* 98 Fed. 465.    It will be readily observed from reading this decision that Justice Taft in arriving at the conclusion he did not have in mind the Building and Loan Association organized under the laws of the state of Montana.

The words ''at a greater rate than is assessed upon moneyed capital in the hands of individual citizens'' as used in section 5219 of the Revised Statutes, refer to the entire process of assessment which in the case of National bank shares includes both their valuation and the rate of per cent of such valuation. Consequently the Act of Congress is violated if in connection with a fixed percentage applicable to the valuation alike of national bank shares and other moneyed investments of capital the state will establish or permit a mode of assessment by which such shares are valued higher in proportion to the real value than is other moneyed capital. (*Boyer* v. *Boyer,* 113 U. S 689, 28 L. Ed. 1089, 5 Sup. Ct. Rep. 706; *People* v. *Weaver,* 100 U. S. 539, 25 L. Ed. 705; *Whitbeck* v. *Mercantile Bank,* 127 U. S. 193, 32 L. Ed. 118, 8 Sup. Ct. Rep. 1121.)

It is apparent that moneyed capital in the hands of individual citizens in the state of Montana would be assessed under the 5th subdivision of section 1999 of the Revised Codes. There was no other provision made under the taxing laws of Montana for the assessment of property of that character. The language used in this section, to-wit: all moneys and credits, secured or unsecured, including all state, county, school district and other municipal bonds, warrants, and securities, would include all investments of moneyed capital in interest bearing security of any kind or character subject to taxation; and the language used would necessarily include moneyed capital of the precise kind and character which has been declared by the numerous decisions to constitute moneyed capital in the hands of individuals which enter into competition with the normal business of banking. The presumption is that taxing authorities in assessing and classifying the property of the county proceeded according to law and that all property listed or assessed under subdivision 5 of section 1999 was property of the precise kind and character that should have been assessed thereunder, and even in the absence of proof showing the particular kind of the various items listed

thereunder the court would be justified in finding that the property assessed under this subdivision was property of such kind and character as enter into competition with the business of banking.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was brought by the plaintiff against the defendants to recover taxes paid under protest. The plaintiff, a national bank at Glendive, alleges that for the year 1921 there were listed and assessed against it real property of the value of $17,780 and "shares of stock and moneyed capital" valued at $85,452. That during the same year there was listed and assessed against all national banks in Dawson county real estate of the value of $50,250 and "shares of stock and moneyed capital" valued at $213,978. During that year there were listed and entered upon the books of Dawson county "assessments for money and credits, secured and unsecured, including all state, county, school district and other municipal bonds, warrants and securities, which represented investments of individuals in securities which represent money at interest and other evidence of indebtedness such as normally entered into the business of banking in the sum of $188,110, which represents moneyed capital in the hands of individuals which enters into competition with national banks and with money invested in the stock of national banks.  *  *  *  " That in the year 1921 various counties of the state of Montana made assessments upon like property in the hands of individuals in the sum of $57,257,031, which represents moneyed capital in the hands of individuals which enters into competition with national banks and with money invested in the stock of national banks. That the tax upon money and credits of individuals is computed upon a basis of seven per cent of its assessed valuation; whereas, the tax upon the shares of stock of plaintiff is based upon a forty per cent valuation.

The plaintiff paid under protest the tax imposed against it in the sum of $2,446.17, which is $2,018.09 in excess of what it would have been computed on a basis of seven per cent instead of forty per cent, and asked judgment for the latter sum. The phrase "shares of stock and moneyed capital," as employed in plaintiff's complaint, is tautological.

The defendants, Dawson county and Etta J. Sorenson, its treasurer, by answer admit the assessment against the bank and that money and credits of individuals are taxed upon a basis of seven per cent of their assessed valuation, and that in 1921 the money and credits of individuals in Dawson county were assessed at $188,110, but deny that any portion of this enters into competition with national banks or with money invested in the stock of national banks. They also admit that various counties of the state had listed and entered upon the assessment books money and credits in the sum of $57,257,031, but deny that any part of it represents moneyed capital in the hands of individuals which entered into competition with national banks or with money invested in the stock of national banks.

From the testimony it appears that the business of the plaintiff bank is principally making loans and receiving deposits. Some of its investments are made in real estate loans and some in state, county, school district and other municipal bonds and warrants, and that on the first Monday in March, 1921, the plaintiff had invested in state, county and school district warrants and securities approximately $60,000. There is in Glendive a building and loan association. A witness for plaintiff who was vice-president of the bank and also a director of the building and loan association testified, "The business of the building and loan association is purely making loans on real estate," and—"We make loans in the First National Bank of Glendive of the same character as the building and loan association makes. Lots of times we take theirs up and sometimes they take ours up. The building and loan association has no other business except to loan money." On the

first Monday of March, 1921, the bank had on deposit about
$100,000 in money. It carries about that much money all
the time.

From the testimony there is no doubt that the plaintiff is a
bank of discount and deposit and that it carries on the ordi-
nary business of a national bank.

In Dawson county there are state as well as national banks
and in computing taxes the capital stock and holdings of the
state banks were computed on the same basis as those of the
national banks. The stock of building and loan associations
was included in the seven per cent classification. Under this
the building and loan stock was assessed at a valuation of
$79,369. Other property under the same classification amounted
to $109,510. There was no testimony to the effect that this
$109,510 was used in competition with the plaintiff, or with
any bank. On the contrary, the only testimony concerning it
was, ''I haven't any idea for what use or purpose it is put.''
Nor was there any testimony as to how the $57,257,031 above
mentioned was or is employed. The names of sixty persons
owning stock in the building and loan association, in various
amounts from $197 to $5,153, appear in the record.

The plaintiff had judgment, from which defendants appeal.

The only question involved is whether the tax or system of
[1] taxation complained of injuriously discriminates against
shares of stock in national banks in favor of moneyed capital
in the hands of individual citizens of the state. The state
would be without power to levy any tax upon shares of stock
in, or upon any of the property of, national banks, were it
not for the permissive legislation of Congress. (*Owensboro
National Bank* v. *Owensboro,* 173 U. S. 664, 43 L. Ed. 850, 19
Sup. Ct. Rep. 537 [see, also, Rose's U. S. Notes]; *Talbott* v.
*Silver Bow County,* 139 U. S. 438, 35 L. Ed. 210, 11 Sup.
Ct. Rep. 594; *New York ex rel. Williams* v. *Weaver,* 100 U. S.
539, 25 L. Ed. 705.) This was recognized as the law in *Dennis*
v. *First National Bank,* 55 Mont. 448, 178 Pac. 580. Congress,
however, has given that authority to the states by the provi-

sions of section 5219, Revised Statutes of the United States (U. S. Comp. Stats., sec. 9784), which reads as follows: ''Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the Legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed.'' While this section provides for taxing the shares to the owner or holder thereof, it does not prescribe to the state the mode in which the tax shall be collected (*National Bank* v. *Commonwealth*, 9 Wall. 353, 19 L. Ed. 701). By its very terms it confers upon the legislature of each state the right to determine and direct the manner and place of taxing all the shares of banking associations located within the state, subject to the restrictions mentioned. So it has been held by the supreme court of the United States that the bank may be required to pay the whole tax as agent of the stockholders. (*National Bank* v. *Commonwealth, supra; Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 U. S. 239, 33 L. Ed. 892, 10 Sup. Ct. Rep. 533 [see, also, Rose's U. S. Notes] ; *Van Slyke* v. *Wisconsin,* 154 U. S. 581, 20 L. Ed. 240, 14 Sup. Ct. Rep. 1168; *First National Bank of Aberdeen* v. *Chehalis County,* 166 U. S. 440, 41 L. Ed. 1069, 17 Sup. Ct. Rep. 629. This power is referred to in *First National Bank of Aberdeen* v. *Chehalis County, supra,* as the ''statutory ap-

pointment of the bank to pay the whole tax as agent of the stockholders."

In the instant case it will be assumed that the assessment of the stock of the plaintiff was made in accordance with the provisions of Chapter 81 of the Session Laws of the Seventeenth Legislative Assembly, approved February 11, 1921, now sections 2064 to 2067, inclusive, Revised Codes of 1921. Under this Act it may not be doubted that the shares of stock in national banks are assessed to the owners or holders thereof consistently with the provisions of section 5219, *supra*, and that the bank is simply made the agent of its stockholders for convenience. As illustrative, section 2 of the Act provides, in part: "For convenience, the assessment of shares of stock in national banks, and herein referred to, shall be entered on the personal property assessment list under the name of the bank, and in such statement the names of the holders of bank stock shall be set forth, and the shares owned by each, and such assessment, when so entered, shall have all the force and effect as if made in the name and against the holders of bank stock individually." On this phase of the case no contention is made. It is tacitly admitted that if the holders of the shares of national bank stock have not been the objects of unfriendly discrimination by the laws of the state, the plaintiff has no grievance.

The effect of section 5219 is that shares of stock in national banks may be taxed by the state, provided no unfriendly discrimination is made against such shares in favor of moneyed capital in the hands of individual citizens of the state. (*National Bank* v. *Commonwealth*, 9 Wall. 353, 19 L. Ed. 701 [see, also, Rose's U. S. Notes].) This moneyed capital in the hands of individuals means moneyed capital employed in competition with the business of national banks. (*Mercantile National Bank* v. *New York*, 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 826; *First National Bank of Aberdeen* v. *Chehalis County, supra; First National Bank* v. *Chapman*, 173 U. S. 205, 43 L. Ed. 669, 19 Sup. Ct. Rep. 407; *Commercial National Bank*

v. *Chambers,* 182 U. S. 556, 45 L. Ed. 1227, 21 Sup. Ct. Rep.
863; *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, 58
L. Ed. 274, 34 Sup. Ct. Rep. 114; *Merchants' National Bank* v.
*Richmond,* 256 U. S. 635, 65 L. Ed. 1135, 41 Sup. Ct. Rep. 619.)
The supreme court has given a broad construction to this stat-
ute at all times.  In *Adams* v. *Nashville,* 95 U. S. 19, 24 L. Ed.
369, after citing *Hepburn* v. *School Directors,* 23 Wall. 480, 23
L. Ed. 112, with approval, it said: ''The Act of Congress was
not intended to curtail the state power on the subject of taxation.
It simply required that capital invested in national banks
should not be taxed at a greater rate than like property
similarly invested.  It was not intended to cut off the power to
exempt particular kinds of property, if the Legislature chose
to do so.''

In the *Hepburn Case* it was shown that by a statute of
Pennsylvania all mortgages, judgments, recognizances, and
moneys owing upon articles of agreement for the sale of real
estate were exempted from taxation except for state purposes,
and the court said it ''could not have been the intention of
Congress to exempt bank shares from taxation because some
moneyed capital was exempt.''  Both the *Hepburn Case* and
*Adams* v. *Nashville* were cited with approval in *Mercantile
National Bank* v. *New York.*  In this exhaustive case Mr.
Justice Matthews used the following language: ''In the case of
savings banks, we assume that neither the bank itself nor the
individual depositor is taxed on account of deposits.  *  *  *
According to the stipulation in this case, the deposits in such
banks amount to $437,107,501, with an accumulated surplus
of $68,669,001.  It cannot be denied that these deposits con-
stitute moneyed capital in the hands of individuals within the
terms of any definition which can be given to that phrase;
but we are equally clear that they are not within the meaning
of the Act of Congress in such a sense as to require that, if
they are exempted from taxation, shares of stock in national
banks must thereby also be exempted from taxation.  No one
can suppose for a moment that savings banks come into any

possible competition with national banks of the United States. They are what their name indicates, banks of deposit for the accumulation of small savings belonging to the industrious and thrifty. To promote their growth and progress is the obvious interest and manifest policy of the state." (*Mercantile National Bank* v. *New York, supra.*)

In *First National Bank of Aberdeen* v. *Chehalis County, supra,* after reviewing a number of its decisions, notably *Mercantile National Bank* v. *New York, supra,* the court, speaking through Mr. Justice Shiras, said: "The conclusions to be deduced from these decisions are that money invested in corporations or in individual enterprises that carry on the business of railroads, of manufacturing enterprises, mining investments and investments in mortgages, does not come into competition with the business of national banks, and is not therefore within the meaning of the Act of Congress; that such stocks as those in insurance companies may be legitimately taxed on income instead of on value, because such companies are not competitors for business with national banks; and that exemptions, however large, of deposits in savings banks, or of moneys belonging to charitable institutions, if exempted for reasons of public policy and not as an unfriendly discrimination against investments in national bank shares, should not be regarded as forbidden by section 5219 of the Revised Statutes of the United States. Furthermore, it was held in *Amoskeag Savings Bank* v. *Purdy, supra,* in which case the United States supreme court agreed with what was said by the court of appeals of New York, in *People ex rel. Bridgeport Savings Bank* v. *Feitner,* 191 N. Y. 88, 83 N. E. 592, that "The state is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality or unfriendly discrimination is inflicted upon them."

Mr. Chief Justice Taft, when Circuit Judge, said in *Mercantile National Bank* v. *Hubbard* (C. C.), 98 Fed. 465: "The next question is whether the operation of the statutory defini-

tion of 'credits' to be returned for taxation in Ohio operates to discriminate in favor of other moneyed capital in the state against national bank shares.   Upon this point the decision in the case of *Bank* v. *Chapman,* 173 U. S. 205, 43 L. Ed. 669, 19 Sup. Ct. Rep. 407, leaves no doubt.   In that case it was held that the term 'moneyed capital,' as used in the federal statute, does not include capital which does not come into competition with the business of national banks, and that exemptions from taxation, however large, such as deposits in savings banks, or moneys belonging to charitable institutions, which are exempted from reasons of public policy, and not as an unfriendly discrimination against investments in national bank shares, cannot be regarded as forbidden by the federal statute.   *   *   * There is proof of the capital in savings banks, and also of the capital invested in building and loan associations: but, under the decision of *Mercantile Bank* v. *City of New York,* 121 U. S. 138, 30 L. Ed. 895, 7 Sup. Ct. Rep. 836, capital invested in savings banks cannot be regarded as moneyed capital, within the meaning of section 5219, exemption of which from taxation can constitute a discrimination within the inhibition of that section.   It seems to me that building associations are certainly not to be differentiated in their purpose or object, or practical effect, from saving banks, and that the capital invested in them, though subject to a somewhat different rule of taxation, cannot be regarded as moneyed capital in competition with the moneyed capital in national banks, any more than is capital invested in savings banks.   The chief object of building associations is to encourage the building of small houses by poor people, and the saving from their earnings, week by week, of an amount sufficient to pay the mortgage debts incurred in the purchase of the land and the construction of the house.   The mere fact that every shareholder in a building association need not be a borrower cannot, I think, change the effect of the general purpose of the building association law." (Affirmed, *Lander* v. *Mercantile Bank,* 186 U. S. 458, 46 L. Ed. 1247, 22 Sup. Ct. Rep. 908.)

With the foregoing in mind, we now come to consider whether there has been unfriendly discrimination against the stockholders of the plaintiff.

Section 1999, Revised Codes of 1921, undertakes to classify the taxable property in this state for the purpose of taxation. There are seven classes. Class 5 includes "all moneys and credits, secured or unsecured, including all state, county, school district and other municipal bonds, warrants and securities without any deduction or offset; provided, however, that the terms, moneys, and credits as herein used shall not embrace the moneyed capital employed in the banking business by any banking corporation or individual in this state." Class 6 includes "the shares of stock of national banking associations and the moneyed capital employed in conducting a banking business by any other banking corporation, association or individual in this state. Such moneyed capital to be ascertained by deducting from the moneys and credits of such banking corporation, association, or individual, the amount of the deposits and any indebtedness representing money borrowed for use in said business, and the value of the shares of any national banking association, to be ascertained by deducting the value of all real estate of such association." Class 7 includes "all property not included in the six preceding classes."

Section 2000 provides: "As a basis for the imposition of taxes upon the different classes of property specified in the preceding section, a percentage of the true and full value of the property of each class shall be taken as follows: * * * Class 5. Seven per cent of its true and full value. Class 6. Forty per cent of its true and full value. Class 7. Forty per cent of its true and full value."

While not necessary to examine the subject critically at this time, it will be noted that no deductions are permitted as to the objects of taxation included in class 5, while important deductions are allowed as to those in class 6. It is not contended that there is any discrimination against national banks in favor of moneyed capital employed in conducting a banking

business by any other banking corporation, association, or individual in this state. It is true that this is not a conclusive test (*Merchants' National Bank* v. *Richmond, supra*), but is an indication to some extent, at least, that it was not the intention of the legislature to evince an unfriendly attitude toward national banks. The provision respecting the taxation of building and loan associations is section 6363, Revised Codes of 1921, in which it is provided that "Every such association shall be assessed for and pay taxes upon its office furniture and fixtures and all real estate acquired in the course of its business. The amount standing to the credit of each member of any such association upon its books shall be considered and held as the individual credit of such member, and each member shall list the shares held by him for taxation at their real value in money in the county of his residence, the same as other credits are listed, except shares from which loans have been made or money advanced by the association, and such shares shall be listed for taxation at the net cash value of the stock to be ascertained by deducting the loan from the cash value of the shares." Whether this section, 6363, contravenes any of the provisions of our Constitution, is not questioned in this proceeding.

That it has been and is the policy of this state to encourage [2, 3] and foster building and loan associations is beyond doubt. These, like savings banks, which are favored in some states for that reason, are institutions tending to encourage industry and thrift, the promotion of which is to the obvious interest of the state. Our statutes respecting building and loan associations, while very imperfect, indicate that these associations have been the subject of special solicitude on the part of the lawmaking body. And as we have seen from the foregoing authorities, the state in respect of taxation may favor them if it sees fit.

A building and loan association is a corporation for the purpose of raising money to be loaned among its members. (Rev. Codes 1921, sec. 6355.) Its members are its stock-

holders. The capital stock named in the articles of incorporation shall be deemed to refer to the authorized capital and the organization may be completed and business commenced when five per cent of the authorized capital is subscribed. The law provides that a copy of the constitution and by-laws of the association shall be submitted to the state examiner, who shall investigate and ascertain the responsibility, character and general fitness of the incorporators, and also whether the public convenience and advantage will be promoted by the organization of the association. With the examiner's approval it is lawful for the association to commence business. Each and every amendment of the association's constitution and by-laws must receive the approval of the state examiner, before the same shall become effective. (Rev. Codes 1921, sec. 6357.) "Such corporation shall have power to issue stock to members on such terms and conditions as the constitution and by-laws may provide. To assess and collect from members and depositors such dues, fines, interest, fees and premiums on loans made, or other assessments as may be provided for in the constitution and by-laws. Such dues, fines, premiums, fees or other assessments shall not be deemed usury, although in excess of the legal rate of interest. To permit members to withdraw all or part of their stock deposits at such time and upon such terms as the constitution and by-laws may provide." There are a number of provisions and restrictions concerning withdrawals mentioned in this section. It goes on: "To acquire, hold, encumber, and convey such real estate and personal property as may be necessary for the transaction of its business, or necessary to enforce or protect its securities. To borrow money not exceeding twenty per cent of its assets, and issue its evidence of indebtedness therefor. To make loans to members and depositors on such terms, conditions, and securities as may be provided in the constitution and by-laws." Then there are provisions respecting the cancellation of loans and the release of securities not necessary to be stated. The association may invest "the money of the association in

city, county, or state warrants and bonds," and may "loan money to other building and loan associations." It may "accumulate from the earnings and invest, as the board of directors may determine, a reserve fund for the payment of contingent losses." It may "make such annual or semi-annual distribution of the earnings (after paying expenses and setting aside a sum for the reserve fund as hereinafter provided), as the constitution and by-laws may prescribe." (Rev. Codes 1921, sec. 6358.) Provisions are made as to the rights of withdrawing members, bonds of officers, a fund for contingent losses, the payment of expenses and losses, and annual statements. The state examiner is given comprehensive powers over such associations. (Rev. Codes 1921, secs. 6359–6374.) The entire Chapter (24, Part III, of the Civil Code of 1921) manifests an endeavor to restrict the powers of such associations and to safeguard the rights of their stockholders.

These associations are not in any proper sense "banking institutions," nor are they. permitted to carry on a banking business. Under our statutes, banks are divided into the following classes: Commercial banks, savings banks, trust companies, and investment companies. (Rev. Codes 1921, sec. 6015.) Building and loan associations do not come within the statutory definitions of either of these classes (Rev. Codes 1921, secs. 6017–6020), and the design of the legislature has been to prevent them from doing business in competition with either. Under the provisions of section 6043, these associations, in common with others not authorized to do a banking business, are prohibited from advertising that they will receive or accept money or savings for deposit, investment, or otherwise, and they are prohibited from making use of any office sign at the place where their business is transacted that such place or office is the place or office of a bank or trust company, or that deposits are received there or payments made on check or any other form of banking business transacted.

"The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to

circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations." (*Mercantile National Bank* v. *New York, supra.*)

It will be observed that the powers of a building and loan association are restricted to rather narrow limits. It may acquire, hold, encumber and convey real estate and personal property within these limitations only: (1) Such as may be necessary for the transaction of its business; (2) such as may be necessary to enforce or protect its securities. It may borrow money not exceeding 20 per cent of its assets. It may make loans as follows only: (1) To its members and depositors on such terms, conditions and securities as may be provided in its constitution and by-laws; (2) to other building and loan associations. It may invest its money in city, county, or state warrants and bonds. The provision that it may invest the moneys in its reserve fund "as the board of directors may determine," must be read in the light of its context; it follows that the directors must invest this as other association money is authorized to be invested.

In passing, it is well to note that virtually there is no difference between "members" and "depositors" as these terms are employed in the statute. Depositors must be and are members. It may be that the word "depositor" is meant to designate a nonborrowing member. Everybody knows that building and loan associations issue two and sometimes three classes of stock. For instance, class A may be stock issued to one who is a borrowing member; class B may be stock issued to a member who deposits money at different times until the amounts he deposits, together with the earnings and interest on the deposited amounts, reach a certain figure, at which time the stock is said to mature. As suggested in *Mercantile Bank* v. *Hubbard, supra,* the fact that some 'members are borrowers

while some deposit money as savings does not change the effect of the general purpose of the law. What was said of savings banks, ''No one can suppose for a moment that savings banks come into any possible competition with national banks of the United States,'' is directly applicable to building and loan associations especially when their objects and limited powers are considered.

But it is argued that the Glendive association was in competition with the plaintiff, because a part of the business of the plaintiff bank is making loans on real estate, and this is likewise the business of the association. A national bank has but limited authority to loan money on real estate. That this is true is shown by an inspection of section 5137, U. S. Rev. Stats. (U. S. Comp. Stats., sec. 9674), and 39 Stats. at Large, 752; 1918 Supplement to Federal Statutes Annotated, p. 472 (U. S. Comp. Stats., sec. 9763). National banks are not permitted to make long-time loans, and such loans as they make are what are secured by simple or straight mortgages, so-called, made as a rule to those who are strangers to the corporation. Building and loan associations are permitted to make long-time loans to their own members, to those who stand in direct relationship to the association's management; they are stockholders of the association. The chief object of building associations being to encourage the building of homes by poor people, it is a common practice, for one desiring to build, to borrow from an association a certain amount, subscribing for an amount of stock at least equal to the amount he borrows, also securing the loan by giving a mortgage upon the property to be improved. By paying interest upon his mortgage and so much a month upon his stock, the stock eventually becomes of sufficient value to equal the amount of the loan. Thus he pays for his home upon the amortization plan. The mortgage may be sold and transferred as other mortgages are. Such mortgages often are purchased by banks and others who desire interest-bearing securities.

It seems that the plaintiff bank bought mortgages from the association, as the law permits it to do. And the association assumed to buy mortgages from the bank which it did not have any right to do under the statute. A building and loan association is permitted to invest its moneys in the securities named in the statute and none other. So if the association attempted competition with the bank in buying and selling mortgage securities, it did what the law prohibits.

It is clear, then, that the finding of the district court upon [4] this issue cannot be sustained for two reasons: (1) Under the law the Glendive Building and Loan Association was not and is not permitted to do business in competition with the plaintiff bank within the purview of section 5219; (2) the state of Montana, in levying taxes, may, if it sees fit, favor building and loan associations as a matter of public policy, and its action in so doing will not be deemed unfriendly discrimination against national banks.

The district court opined that "it may fairly be inferred from the testimony that a part of the said $188,110 assessment was composed of notes, secured and unsecured, and other evidences of indebtedness, all of which came into direct competition with the business of the plaintiff bank," and "from the foregoing it is apparent that a material part of the property assessed as aforesaid for $188,110 represents moneyed capital within the meaning of said section 5219 of the Revised Statutes of the United States; that such property comes into competition with the moneyed capital of the plaintiff bank." With these statements we cannot agree. As observed above, the building and loan association was not in competition with the plaintiff bank; the building and loan stock was assessed at $79,369 and with respect to the remainder of the $188,110 the record is barren of any testimony showing that any of it was employed in competition with the bank. In the absence of an affirmative showing in this respect, the plaintiff cannot recover. (*Bank of Commerce* v. *Seattle*, 166 U. S. 463, 41 L. Ed. 1079, 17 Sup. Ct. Rep. 996; *First National Bank of Wellington* v.

*Chapman,* 173 U. S. 205, 43 L. Ed. 669, 19 Sup. Ct. Rep. 407 [see, also, Rose's U. S. Notes].)

For the foregoing reasons, the judgment is reversed, and the cause is remanded to the district court of Dawson county, with directions to dismiss the action.

*Remanded with directions.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, STARK and GALEN concur.

Rehearing denied March 22, 1923.